WILLIAM EDWARDS & another *vs.* WHITE LINE TRANSIT COMPANY.

It is no defence to an action against a common carrier for breach of his contract to deliver goods, that they were taken from him by an officer under an attachment against a person who was not their owner.

CONTRACT against common carriers for breach of their agreement to carry safely from Cincinnati to Providence, and deliver to the plaintiffs, a car load of middlings. Another count on a contract to carry corn is now immaterial.

At the trial in the superior court, before *Morton*, J., without a jury, it appeared that the plaintiffs, doing business in Providence, bought the middlings in question from the firm of David Schwartz & Company in Cincinnati; and that David Schwartz & Company delivered them to the defendants, received from the defendants a receipt, and sent it to the plaintiffs with a sight draft for the price of the middlings, which the plaintiffs accepted. On these facts the judge ruled that the property in the middlings was vested in the plaintiffs.

It also appeared that David Schwartz & Company bought the middlings from persons in Cincinnati, under an agreement to pay for them in cash on delivery to the defendants, but had not done so; that when the middlings, in the hands of the defendants, reached Buffalo in New York, they were attached as the property of David Schwartz & Company, by the sheriff of Erie County, upon writs issued in favor of these persons, in suits brought by them against David Schwartz & Company

for the price thereof; and that these suits were prosecuted to judgment, and the middlings sold upon executions issuing thereon.

" The defendants contended that the sale to David Schwartz & Company was a conditional one, viz: upon the payment of the cash for the same, and that, they having failed to pay in cash, no title vested in them which they could transfer to the plaintiffs. But the judge ruled that as the parties who sold the middlings to David Schwartz & Company, and who alone could take advantage of said condition, (if there was one,) had commenced their suits, and had prosecuted the same to final judgment, for the price of the property thus sold, they had waived any right which they might have had to take advantage of the same. But he also ruled that, as under the attachments the goods were taken out of the possession of the defendants, and as he found that there was no collusion or negligence or fraud on their part, the performance of their contract to carry and deliver the goods was thus rendered impossible by the intervention of a superior power, which necessarily excused them from such performance; that, upon the attachment by the sheriff of the goods, the same came into the custody of the law; whether they were the property of the plaintiffs or of David Schwartz & Company, they were in the custody of the law for adjudication; that the defendants could not obtain possession of them so as to fulfil their contract, except by a forcible violation of the law; and that for these reasons the plaintiffs could not recover for the middlings;" and he found for the defendants. The plaintiffs alleged exceptions.

*L. Child & L. M. Child*, for the plaintiffs.

*G. S. Hale*, for the defendants, cited *Stiles* v. *Davis*, 1 Black, 101; *Verrall* v. *Robinson*, 4 Dowl. Pr. Cas. 242; *S. C.* 5 Tyrwh. 1069; 2 Cr., M. & R. 495; *Bliven* v. *Hudson River Railroad Co.* 35 Barb. 188; *S. C.* 36 N. Y. 403; *Hagan* v. *Lucas*, 10 Pet. 400; *Fletcher* v. *Fletcher*, 7 N. H. 452; *New Hampshire Iron Factory Co.* v. *Platt*, 5 N. H. 193; *Burton* v. *Wilkinson*, 18 Verm. 186; *Touteng* v. *Hubbard*, 3 B. & P. 291.

WELLS, J. The only exception relied on here is that which relates to the car load of " middlings " taken from the carriers by attachment, and sold on execution, in a suit brought in New York against the plaintiffs' consignors, David Schwartz & Company, by parties from whom they had previously obtained the property.

The court held, and we think correctly, that there was a sufficient transfer and delivery from David Schwartz & Company, to vest the title in the plaintiffs; that the suit against David Schwartz & Company, the judgment therein, and levy upon the property, were sufficient to show a waiver of the condition of the sale by which David Schwartz & Company obtained possession of it from the former owners. Aside from that consideration, any defect in the title of the bailor could not be set up against him or against his consignee, by the bailee, unless the superior title had been asserted against the bailee. In this case the property was not taken from the carrier by virtue, or upon the assertion of any superior title in the former owners. It was taken as the property of David Schwartz & Company, by means of legal process against them. For all purposes of this decision, therefore, we may lay out of view the claim that Schwartz & Company had not acquired title and right to transfer the property, and regard the plaintiffs as having become the absolute owners of it before the attachment.

The judge who tried the case decided, that, " as under the attachments the goods were taken out of the possession of the defendants " without collusion, negligence or fraud on their part, " the performance of their contract to carry and deliver the goods was thus rendered impossible by the intervention of a superior power, which necessarily excused them from such performance ; that, upon the attachment by the sheriff of the goods, the same came into the custody of the law; whether they were the property of the plaintiffs or of David Schwartz & Company, they were in the custody of the law for adjudication ; " and that the defendants could not be held liable for not transporting and delivering goods so taken from them. This ruling is in accordance with what might seem, at first sight, to be the decision of

the supreme court of the United States in *Stiles* v. *Davis*, 1 Black, 101. The defendants' counsel insists that to hold other-wise would be in direct conflict with that decision.

We do not so regard the matter. In *Stiles* v. *Davis*, the action was not brought upon the contract of carriage; nor for a violation, by the defendant, of his obligations as carrier. It was an action of trover for the conversion of the goods. The failure to deliver the goods at another place than that of their destination, upon a demand made there; with no denial of the plaintiffs' right, but merely for the reason that they were de-tained under attachment by legal process; would not be a con-version of the property. The case decides nothing more. The question, whether the same facts would constitute a good de-fence to a suit against the defendant for breach of his contract or obligation as common carrier, was not decided, and was not raised by the form of the action. The opinion, by Mr. Justice Nelson, does indeed assign, as a reason for the decision, that the goods " were in the custody of the law, and the defendant could not comply with the demand of the plaintiffs without a breach of it;" that " the right of the sheriff to hold them was a ques-tion of law, to be determined by the proper legal proceedings, and not at the will of the defendant, nor that of the plaintiffs." But this language must be interpreted with reference to the pre-cise question then under consideration. In one sense, the prop-erty was in the custody of the law; so far, at least, that the sur-render of its possession to the officer claiming to attach it upon legal process was not tortious on the part of the carrier, so as to subject him to the charge of converting it to his own use. But that custody was of no effect against any one having an inter-est in the property, not made party to the suit in which the process issued. It was not in the custody of the law in the sense in which property that is the subject of proceedings *in rem* is in the custody of the law, or property actually belonging to the party against whom the suit is brought. In personal ac-tions, the attachment of property of another than a defendant in the suit is a trespass; and, as to the true owner, the property is not regarded as in the custody of the law. It may be re

claimed by replevin; except where the replevin would bring state and federal authorities into conflict, as in *Howe* v. *Freeman*, 14 Gray, 566; *S. C.* 24 How. 450. The officer may always be held liable as a trespasser for its full value, notwithstanding the pendency, and without reference to the suit in which the attachment was made. This liability is expressly recognized in the closing paragraph of the opinion of Mr. Justice Nelson. See also *Buck* v. *Colbath*, 3 Wallace, 334. It does not appear, from the report, how far, if at all, the decision in *Stiles* v. *Davis* was affected by the fact that the carrier was made a party to the proceedings, as garnishee.

The present suit is brought against the defendants upon their contract as carriers. Assuming that the title to the property had vested in the plaintiffs, according to the finding of the facts at the trial, the attachment by the officer, in a suit against David Schwartz & Company, was a mere trespass. As against the plaintiffs, it was of no more validity than a trespass by any other unauthorized proceeding, or by an unofficial person. The carrier is not relieved from the fulfilment of his contract, or his liability as carrier, by the intervention of such an act of dispossession, any more than he is by destruction from fire, or loss by theft, robbery or unavoidable accident. In neither case is he liable in trover for conversion of the property; but he is liable on his contract, or upon his obligations as common carrier. The owner may, it is true, maintain trover against the officer who took the property from the carrier; but he is not obliged to resort to him for his remedy. He may proceed directly against the carrier upon his contract, and leave the carrier to pursue the property in the hands of those who have wrongfully taken it from him.

It will not be understood, of course, that these considerations apply to the case of such an attachment in a suit against the owner of the property. If the present plaintiffs had been defendants in the suit in which the attachment was made, the case would have stood differently. In that state of facts, the property would have been strictly in the custody of the law, so far as these parties were concerned, and the intervention of those

legal proceedings would have deprived the plaintiffs of the right to require the delivery of the property to themselves until released from that custody.

But it is not so upon the state of facts shown by this report; and the ruling of the court against the plaintiffs upon this branch of the case was wrong. They are therefore entitled to a new trial upon the counts of their declaration relating to the car load of " middlings;" and for that purpose the

*Exceptions are sustained.*