NASHVILLE & CHATTANOOGA RAILROAD COMPANY *v.* J. N. ESTES.

CARRIER. *Destruction of property by Confederate soldiers.* A common carrier is not liable for property, received within the Confederate lines for transportation, which was seized and destroyed by Confederate soldiers in obedience to military orders, and of which no notice was given to the consignor.

FROM DAVIDSON.

Appeal in error from the Circuit Court of Davidson county.   N. BAXTER, J.

EAST & FOGG for Railroad.

DEMOSS & MALONE for Estes.

McFARLAND, J., delivered the opinion of the court.

This action was brought by Horton, Estes. & Co., to recover of the railroad company the value of fifty-

two barrels of whiskey delivered to their agent at Nashville, on the 5th of February, 1862, and consigned to the plaintiff at Memphis. The cause was before this court several terms ago, upon a judgment in favor of the plaintiffs. The judgment was reversed and a new trial granted. The opinion of the court, delivered by Chief Justice Nicholson, will be found in 7 Heis., 626. A second trial also resulted in a verdict and judgment in favor of the plaintiffs, from which the defendant has again appealed in error.

An opinion was heretofore delivered affirming the judgment, but a rehearing was granted and the cause has been reargued. In its present aspect the record presents one question which we have deemed worthy of very careful consideration. It is conceded that the whiskey was delivered to the company's agent on the 5th of February, 1862, and an ordinary shippers receipt given; and it is conceded that the whiskey was never delivered to the consignees. At the time, the late war was in progress; Nashville and Middle Tennessee was in the occupation of the Confederate forces. and the scene of active military operations. It is claimed for the defendant that prior to the 5th of February, 1862 (when the whiskey was delivered to their agent), their road had been seized by the Confederate military authorities for the transportation of troops and army stores; or if not actually seized, that the commanding officers had given orders to the officers and agents of the company to give the shipment of army stores and supplies preference over private freights, and that their orders were enforced by the presence of

armed soldiers; and that in consequence of the enforcement of these orders, and the large amount of Confederate army stores to be shipped, the company was unable to ship the whiskey prior to the 18th of February. In the meantime, to-wit, on the 16th of February, the fall of Fort Donelson occurred and the Confederate army abandoned Nashville and retreated southward, and the rear guard, on or about the 18th, without fault, as it is claimed, on the part of the company, destroyed the whiskey at the depot at Nashville, in order to prevent it falling into the hands of the pursuing army, and also to protect the citizens from the dangers to be apprehended if the whiskey should fall into the hands of the soldiery. The question is, assuming that there was no actual fault or negligence upon the part of the company, would these facts constitute a defense?

The charge of the trial judge was in substance: that if the company assumed the liability of a common carrier with respect to the whiskey, that is to say, if at the time the whiskey was delivered for shipment, the road had not been actually seized and taken out of the hands of the company's agents, or if in fact the road had been so seized by the military—still if the company chose to suppress the fact and accept the freight for transportation without qualification of its liability—the consignor and owners not being informed of the facts—*then and in either event, the company becomes liable as a common carrier*, and being so liable, the destruction of the whiskey by the military, even though without fault upon the part of the company,

would be no defense; that such destruction of the
whiskey could only be a defense upon the assumption
*that the company did not become liable as a common
carrier,* for the reason that at the time the whiskey
was delivered for shipment, the road had been seized
by the military so as to deprive the company of its
use; in which event the liability of a common carrier
would not attach, unless the company suppressed the
facts of seizure and accepted the whiskey for shipment
unconditionally, the consignor and owners being igno-
rant of the facts.    If for the reasons stated, the com-
pany did not become liable as a common carrier, then
if the company was free from negligence, the destruc-
tion of the whiskey by the military, under a necess-
sity which justified such action, would be a good de-
fense.

    This charge was based upon the doctrine that when
the liability of a common carrier attaches, he is liable
for all losses, except those which result from the act
of God, the public enemy or the shipper, and that the
Confederate military forces were not at the time and
place the public enemy.    It was held in the opinion
of Judge Nicholson, in this case before referred to,
that the Confederate army was not to be regarded as
the public enemy; but the opinion further holds, that
nevertheless the destruction of the whiskey by the army
—if under a necessity which justifies such appropriation
of private property—might, upon a different ground, con-
stitute a defense.    In support of this conclusion, Judge
Nicholson assumes that the Confederate military authori-
ties had taken possession of the road by force and ap-

propriated it, to military purposes, and that "for the time being the railrord company ceased to be a common carrier, and was allowed, to carry only for the army." However this assumption of fact might have been justified by the record as it then appeared, the proof was different upon last trial—as appears from the bill of exceptions before us. The proof now indicating that the road had not been actually taken possession of by the military, but only that the company's agents were required to give preference to shipments for the army, leaving the company, however, in possession of the road and at liberty to ship private freight when, after complying with army requisitions, there was room left for the purpose. In all events, this was a contested question of fact. So the trial judge was of opinion, that Judge Nicholson's opinion holding that the destruction of the whiskey by the Confederate forces, might be a valid defense, was upon the assumption thht the road had been actually taken out of the possession of the company, depriving it of the power to act as a common carrier, and that if the proof showed the fact to be otherwise, upon the present trial the defense would not be available. The opinion is susceptible of this construction. It, however, cannot be taken as settling the question in favor of the view taken by the trial judge, but rather as leaving it open and undetermined.

If the present verdict rested upon the ground of the company's negligence in failing, after its inability to ship the whiskey was known to its agent, and after the danger from the retreating and advancing armies,

became imminent, to remove the whiskey to a place of greater safety, or in failing to give notice to the owners or their agents, so that they might look after their property, it would probably be free from difficulty. But the charge holds that even though there may have been no negligence in these respects, the company would still be liable if the liability of a common carrier attached to it at the time the whiskey was received for shipment.

This, therefore, is the question to be determined. We do not doubt the correctness of the charge as to what would be sufficient to fix upon the company the liability of a common carrier, and that the liability did attach in this case. If the whiskey was destroyed by the Confederate troops—an overpowering force—without negligence or collusion upon the part of the carrier, there can be but one reason why this should not be a valid defense—that is, that the carrier is an insurer against such losses.

The carrier is liable for losses by fire, theft, robbery or unavoidable accident, even though resulting from an overpowering force. The rule is founded upon grounds of public policy in the interest of commerce and trade.

The argument for the plaintiffs is that the carrier is liable for all losses except those resulting from the act of God, the public enemy, or the shipper himself and it having been held that the Confederate army was not in this sense the public enemy, it must follow that the destruction of the property by the Confederates would be no defense.

Railroad *v.* Estes.

But it has been held that there are other exceptions to the carrier's liability, as for instance, where the property is taken from him by judicial process rightfully issued. See the case of *Bliven & Mead* v. *Hudson River Railroad Company*, 36 New York, where it is held that it is a good defense for the carrier to show that the goods were seized by judicial process at the suit of the rightful owner, *provided notice be promptly given to the consignor.* Also in the case of *Stiles* v. *Davis & Barton*, 1 Black., 101, it was held that ' where goods are attached in the hands of common carriers, by garnishment, in a suit' against a third person, they are in the custody of the law, and the carrier is not justified in surrendering them to the consignee until a judicial determination of the question, and until the question is determined, is not bound to deliver to the shipper on demand. In this latter case nothing special is said in the opinions about notice, but it appears that the owners demanded the goods of the carrier a few days after the levy of the attachment, and delivery was refused upon the ground that the carrier had been summoned as garnishee in the attachment suit, thus showing actual notice.

The case of *Wells* v. *Maine Steamship Company*, decided by the United States Circuit Court for Maine, Justice Clifford sitting with the District Judge (4 Clifford, 228), is also on the same subject. In that case whiskey was shipped from New York by the Steamship Company consigned to the plaintiff at Portsmouth, New Hampshire, by way of Portland, Maine, at which latter point it was the duty of the carrier to deliver

the freight to the Eastern Railroad, the next in the line. At Portland the whisky was seized by officers of the State of Maine, claiming that it was forfeited for an alleged violation of the laws of that State. A proceeding was instituted in the nature of a proceeding *in rem* to have the forfeiture declared, and it was so declared and the whiskey was destroyed. The owner had due notice of the seizure. It was held, Justice Clifford delivering the opinion, that the carrier was discharged from all obligation to deliver the whiskey, unless it could be shown that the court of Maine, declaring the forfeiture, had no jurisdiction, or that the law under which the seizure was made, was unconstitutional and void. Neither of which positions were, in the opinion of the court, maintained.

The seizure having been made under a constitutional law, and by a process from a court having jurisdiction, and notice given to the owner, the carrier was discharged and not bound to show that the decision of the court declaring the whiskey forfeited was correct, either in law or fact. The opinion refers to the case of *Bliven* v. *Hudson River Railroad* and *Stiles* v. *Davis*, above cited, besides other authorities.

The case of *Edwards* v. *White Line Trans. Company*, 104 Mass., 159, holds that it is no defense to an action for breach of the contract to carry when the goods were taken out of the hands of the carrier under an attachment against a person who is not the true owner. These authorities, while not directly in point, tend to illustrate the principle involved. It is, however, not in all cases sufficient to show that the goods are taken

from the carrier by an overpowering force—for if taken by robbery and insurgents it is no defense, even though the force be overwhelming.

The Confederate government having been recognized as a government *de facto,* having actual possession of the country, its acts in prosecuting the war, in reference to the citizens and their property, must be held to have had the same effect for the time being as the acts of a rightful government. The seizure and appropriation of private property in accordance with the usages and customs of war must be held to have been within its powers. The citizens, therefore, would have no redress against the soldiers and others who, in obedience to military orders, may have seized or destroyed their property. They could only have such redress as the government might choose to make. The acts of the Confederate military, therefore, in regard to the citizens and property within the territory of the Confederate States, would stand precisely as the acts of the United States forces towards the citizens of the loyal States. The property might have been seized or destroyed by the military if in the hands of the owner. In that event he would have had no remedy against the soldiers individually. That such property might be thus destroyed, see *Harrison* v. *Wisdom,* 7 Heis., 99.

Does it alter the case that at the time of the seizure the property of the plaintiff is in the hands of a carrier? The *I. C. R. R. Co.,* v. *Ashmead,* 43 Illinois, 487, seems to recognize the doctrine that the carrier will be excused if he is prevented from complying with his undertaking by the acts of the United

States military forces.    And in the case of the *Rail-road* v. *Hurst*, [11 Heis., 625, it was held not only that citizens, but common carriers were justified in submitting to the orders of the military officers of the Confederate army, and for doing so, incurred no liability to third parties.

This is upon the ground not only that it is an overpowering force—but a force exercised in obedience to the authority of the government, having for the time being, dominion and control of the country—which it is the duty of citizens and subjects to obey in the same sense that it is their duty to submit to legal process and the laws of the land.

This brings us, therefore, to the conclusion that the charge of the trial judge was erroneous, if the question we have been considering was fairly presented. It will be noticed that in cases above referred to, where the goods were seized under civil process, it was regarded as essential that the owner or consignor should be notified of the proceeding.    This was for the purpose of giving him an opportunity to appear and litigate his rights.

Notice in a case like this, where the goods were seized and at the same time destroyed by the military, could not be essential for the same reason.    It might, however, be important to show that the owner had either notice or actual knowledge of the destruction of the goods, for in that event he might obtain compensation from the government.

No notice appears to have been given in this case, nor does it appear when the plaintiffs acquired knowl-

Railroad *v.* Estes.

edge of the facts.    The question was not made in the court below.    It is probable, however, from the circumstances, that the consignor had knowledge of the destruction of the whiskey soon after it occurred.    We do not, however, hold that notice or knowledge was essential.

Upon a reconsideration, therefore, of our former opinion, we have arrived at a different conclusion, and the affirmance will be set aside and the judgment reversed and a new trial granted.