MacVeagh and others *v.* Atchison, T. & S. F. R. Co.

Filed January 19, 1885.

1. COMMON CARRIER—STOPPING IN TRANSITU—NEW ORDER TO SHIP—CONTRACT —PARTY.

A common carrier who, upon notice from the owner of goods to stop them *in transitu* and hold them for such owner, complies, does not become party to a new contract of carriage by the subsequent order of the owner to ship them to another person and place.

2. SAME—LOSS OF GOODS—RESPONSIBILITY GENERALLY—PROXIMATE CAUSE.

A common carrier is only liable where the injurious act complained of is the proximate and not the remote cause of the loss.

3. SAME—SEIZURE OF GOODS UNDER LEGAL PROCESS—LIABILITY OF CARRIER.

Seizure under legal process, like the act of God, will excuse the common carrier from delivering goods intrusted to his care for shipment.

4. SAME—ATTACHMENT LEVY—DUTY OF CARRIER.

It is not the duty of a common carrier to remove goods committed to him, in order to prevent their being subjected to an attachment levy.

5. SAME—SEIZURE OF GOODS—KNOWLEDGE BY OWNER—NOTICE—RESPONSIBILITY.

If property in the hands of a common carrier is seized under legal process, and the owner has timely knowledge thereof, the carrier has a right to presume that such owner will take the proper steps in the premises without formal notice from him. In such a case the negligence and laches of the owner, if it does not occasion the loss, so far contributes towards it that he must bear the burden of it, and he cannot be heard to attribute the fault to another.

Appeal from district court, Bernalillo county.

*W. B. Childers,* for appellants.

*H. L. Waldo,* for appellee.

AXTELL, C. J. This is an action brought to recover the value of certain goods, wares, and merchandise alleged to have been shipped by the plaintiffs over the railroad of the defendant, and to have been lost by the negligence of the defendant. The declaration contains two counts—one in case, the other in trover. The defense was the general issue, and a special plea setting up the seizure of the goods under legal process. The court, on the trial below, directed a verdict for defendant. It appears from the evidence that Franklin Mac-Veagh & Co., a firm in Chicago, having sold on credit certain groceries to Richards & Co., a firm at Cerillos, in Santa Fe county, New Mexico, on the sixteenth day of February, 1882, delivered these goods at Chicago to the Chicago, Burlington & Quincy Railroad Company, to be shipped over said company's road to Atchison, Kansas, and thence over the railroad of the defendant to Cerillos, a station on the line of defendant's road. After the goods were shipped, Richards & Co., the consignees, became insolvent, still indebted to plaintiffs for the goods. On the twenty-sixth day of February, plaintiffs requested Ripley, agent of the Chicago, Burlington & Quincy Railroad Company at Chicago, to stop the goods, if possible, at Pueblo, and change con-

signment to read: "Order Franklin MacVeagh & Co." Or, if too late to stop at Pueblo, to make consignment read: "To order Franklin MacVeagh & Co., Cerillos." The plaintiffs were advised, March 6th, that the goods were held at Cerillos, as requested by them. Subsequently, plaintiffs, through the Chicago, Burlington & Quincy Railroad Company, ordered these goods to be shipped to one C. A. Stein, at Albuquerque. It does not appear from the record at what precise time this order was received, although it is to be gathered from a letter of Peabody, defendant's agent at Atchison, under date of March 31st, that he had some previous knowledge of such order. The goods were never shipped by the defendant from Cerillos, but remained there until the sixteenth day of March, when one N. B. Laughlin presented his authority as deputy sheriff of Santa Fe county, produced and read certain writs of attachment, declared to the agent that he attached the goods in question as the property of Richards & Co., and would hold the railroad company responsible for them, but did not take the goods into manual possession, nor summon the defendant as garnishee. Thereafter the goods remained in the possession of the defendant until April 19th, following, when, as alleged by defendant, they were actually seized and taken possession of by the sheriff under said writs of attachment. These goods having reached their place of destination and been held for plaintiffs, as requested, we think the contract of carriage had terminated, and the liability of the defendant as a warehousemen had begun. It makes no difference that the goods had not been removed from the car.

It is in evidence that the defendant had no depot or warehouse building at Cerillos; its business being transacted in a box car. To render the defendant liable as a common carrier for the loss of these goods, a new contract must be shown to have been entered into between the plaintiffs and defendant, followed by a loss through the negligence of the defendant. The order to ship to Stein, at Albuquerque, of itself does not constitute such a contract. Some promise or undertaking by the defendant to carry as ordered must appear, but the evidence does not disclose it. For refusing to carry when ordered or requested so to do, a common carrier will be subjected to liability. The obligation is to carry, and he may not ignore it; but the cause of action stated does not proceed upon the theory that defendant refused to carry, but that it undertook and through negligence failed to deliver. It is contended that this acknowledgment by the defendant that it held the goods at Cerillos subject to the order of plaintiffs as requested by them, and the subsequent order to ship to Stein, at Albuquerque, constituted a contract. Fairly construed, this acknowledgment by the defendant had no other object or effect than to recognize the ownership of the goods as being in the plaintiffs instead of Richards & Co. against whom they were exercising the right of stoppage in transitu, and merely changed the destination of the goods at Cerillos to MacVeagh & Co. The right of action, if any, was

against the defendant as a warehouseman for failing to forward, and not as a common carrier. But should it be conceded that the facts proved constituted a contract to carry to Albuquerque, and, the goods being in the hands of the defendant, liability as a common carrier thereby attached, still the defendant is not liable for the delay in keeping these goods at Cerillos, by means whereof they became exposed to seizure under legal process. A common carrier, the same as any other person, is only liable where the injurious act complained of is the proximate and not the remote cause of the loss. That these goods would not have been seized upon legal process as the property of a third person, and hence not lost to the plaintiffs, if they had been forwarded promptly to Albuquerque, does not make the defendant liable. Seizure under legal process, like the act of God, will excuse the common carrier from delivering goods intrusted to his care for shipment. There is no pretense in this case that there was any collusion on the part of the defendant to have these goods seized, but only that the delay exposed them to seizure. For this the defendant is not liable. The injury complained of must be shown to be the direct consequence of the defendant's negligence. It is not enough that the negligence of the defendant contributed as a remote cause to the loss which happened. The failure to ship promptly and the detention at Cerillos, at most, was the remote cause of the loss. *Hoadley* v. *Transportation Co.* 115 Mass. 304; *Railroad Co.* v. *Reeves*, 10 Wall. 176. Nor is it considered that the delay occurring after the sixteenth of March, the action of the deputy-sheriff lacking as it did some of the technical essentials of a valid levy, and although it might have been reasonably anticipated that it might be followed by a more formal proceeding, was changed into the class of proximate as distinguished from remote causes. Besides, it is not altogether certain, under the circumstances, whether the obligation even of the common carrier imposed the duty of secretly or openly removing these goods beyond the reach of the sheriff of Santa Fe county, for the mere purpose of avoiding service of writ of attachment. A decent respect for the law, and the process by which it is enforced, whatever may be the character or station to whom it may be applied, is always commendable, and to pursue a course of sharp practice with it under any circumstances cannot be too severely reprehended.

It is contended that there was no valid seizure of the goods. In addition to what transpired on the sixteenth of March, the evidence shows that the deputy-sheriff kept a sort of surveillance over these goods until the morning of the nineteenth day of April, when he again went to the defendant's agent at Cerillos, as deputy-sheriff, and demanded possession of the goods, to which demand the agent opposed a refusal, saying that he wanted to see the sheriff and get his receipt. A few days prior to this Laughlin had been appointed receiver of Richards & Co. On that same day, and a few hours after, the sheriff, in person, together with Laughlin, went to the agent and demanded

possession of the goods, paid the freight, and, turning to Laughlin, told him to go and get the goods. The agent went with the deputy, opened the car, and said to him, "Here are the goods." Laughlin obtained permission to leave the goods in the car, went away, and, for want of a team that day, came back the next and took away the goods. There is no color for saying these acts did not constitute a valid seizure under the writs of attachment. The most scrupulous precaution had been taken by the agent to deliver these goods to Laughlin in his character of deputy-sheriff. That the sheriff should permit him (Laughlin) to take the goods as receiver, cannot alter the situation of the defendant so as to make it liable for a wrongful delivery in obedience to legal process.

A more difficult question to be decided is as to the notice which plaintiffs had or ought to have had of the seizure of these goods under the attachment. In *Stiles* v. *Davis*, 1 Black, 107, a leading case in this branch of the law, nothing is said about the necessity of giving the owner notice of the seizure. The court decides that seizure under legal process of goods or the property of a third person constitutes a good defense to an action by the true owner, and says that the remedy pursued in that case, an action of trover, was a mistaken one; that the officer or the plaintiffs in the attachment suits directing the levy were the proper parties to have been sued. The language of the court is so broad and sweeping in its declaration of legal principles applicable to this class of cases, that there seems to have been left no room for introducing a lack of notice to the owner of the seizure, as a fact that would modify the principle therein announced; and were it not that courts of the highest respectability have confined the rulings in that case as applying only to actions of trover, and not when the suit is brought on the contract of carriage, we should be inclined to hold, upon that decision, that seizure under legal process constituted a valid defense, with or without notice thereof to the owner. But it must be admitted there are strong reasons for requiring prompt notice to be given of the seizure of his goods to the owner, especially in a proceeding to which he is not a party, and of which he could have no notice; reasons so cogent that sound law seems imperatively to require that the owner should have such notice, or that he should be in possession of such knowledge of the danger menacing his property, and under such circumstances as that a mere technical performance of the requirements of the law by the common carrier would not place him in any better situation in relation to his property than the knowledge already possessed by him enabled him to occupy. If property has been seized under legal process, and the owner has timely knowledge thereof, and was as much in a position, by the exercise of ordinary and proper diligence, to protect it as if formal notice had been given, the common carrier may well presume that such diligence will be employed, and thus be excused from the refined and technical observance of the rule as to the notice and kind

of notice which, by some decisions, seem to be required. In such case, the negligence and laches of the owner, if it do not occasion the loss, so contributes towards it that he should bear the burden of it, and not be heard to attribute it to the fault of another. The rule laid down in *Robinson* v. *Railroad Co.* 16 Fed. Rep. 57, is a very stringent one; but, as applied to the facts of that case, none too much so; nor is there anything said by the court in that case which conflicts with the views herein expressed. Knowledge, under certain circumstances, is recognized as fully taking the place of formal notice.

In this case, the first steps towards an attachment had been taken on the sixteenth day of March. That the agent regarded these goods as attached is quite manifest, and so held the goods subject thereto. On the fourth of April, in answer to an inquiry from Peabody, defendant's agent at Atchison, he informed him by letter that the goods were attached by the sheriff. This letter, in the usual course of railroad communication, was transmitted to the various offices along the lines over which the goods had been shipped until it reached Chicago, when it was sent, as it seems from the indorsement thereon by Ripley, the Chicago, Burlington & Quincy agent, to the plaintiffs, who received it not later than the eleventh day of April. In contemplation of law, notice is nothing more than the knowledge of a fact, state of facts, or condition of things communicated by one whose duty it is so to do to another, who has the right to receive it, or some interest in receiving it. In this case, the fact which plaintiffs were interested to know was that writs of attachment were in the hands of the sheriff, and their property was menaced or affected in a hostile manner thereby. The question is, were they not, by this letter, coming from defendant's agent, written in the regular line of his duty, transmitted through the proper channels, and which reached them eight or nine days before the final act, dispossessing the defendant of the goods, duly and timely admonished of their jeopardy? Certainly, they were thereby placed in a much better position for the purpose of exercising the proper and necessary care to protect and rescue their property than if, upon the seizure of the same on the nineteenth of April, the most prompt and formal notice had been given. If these facts do not satisfy the technical requirements of the law of notice as applicable to common carriers in cases of this kind, they do make out such a full and timely knowledge on the part of the plaintiffs of the situation of their goods with reference to the attachment proceedings, and under such circumstances as call for prompt and immediate action in their own behalf, a failure to give which can be designated as negligence and laches on their part, and, if loss resulted, to them must attach the blame and consequences. No error appearing in the record, the judgment of the court below is affirmed.

WILSON, J., concurs.