EDWIN COOLEY *vs.* MINNESOTA TRANSFER RAILWAY CO.

53  327
61  106

Argued May 3, 1893. Decided May 22, 1893.

**Warehousemen are Subject to Garnishment, Excusing Delivery.**

A railway company, after the termination of the transportation of property, and while it is holding the same only as a warehouseman, is liable to garnishment in respect to such property. Such a garnishment at the suit of a stranger to the contract of carriage, while it remains in force, excuses the company from delivering the property to the shipper or consignee.

**Lien of Carrier and Warehouseman on Property Pledged.**

The lien of the carrier and warehouseman for keeping the property is superior to that of a pledgee who had procured the property to be transported and stored.

**Evidence Considered.**

Evidence *held* to conclusively show that the owners of personal property pledged it to the plaintiff to secure their indebtedness to him.

**Pledge Held not Surrendered.**

A perfected pledge *held* not avoided or terminated by the fact that for a special purpose, and for the benefit of the pledgee, he caused the property to be nominally consigned, on a shipment of the same, to the pledgors.

**Pledgee's Rights Superior to Those of Pledgor's Creditors.**

A subsequent garnishment by an existing creditor of the pledgors would not thereby acquire a right superior to that of the pledgee.

**Sale did not Change Their Relative Rights.**

A sale of the pledged property by the pledgors to the pledgee, subsequent to the garnishment, would not extinguish the rights of the pledgee, as between himself and the garnishing creditor.

Appeal by plaintiff, Edwin Cooley, from an order of the District Court of Ramsey County, *J. J. Egan,* J., made September 10, 1892, denying his motion for a new trial.

On October 14, 1889, at Minneapolis, the plaintiff, Edwin Cooley, signed as surety, or indorsed, notes for the benefit of Cable & Chute, railroad contractors, to the amount of $7,362.43, due one year thereafter. To secure him against loss, they mortgaged to him on that day their horses and mules and other personal property used in grading. In May following the property was taken

by consent of both parties to Custer City, South Dakota, to work on a railroad which Cable & Chute had contracted to grade at that place. When these notes fell due, plaintiff was compelled to pay them, and in March, 1891, he sent A. D. Polk, his agent, to Deadwood, S. Dak., to take the property or make new arrangements for his indemnity. Cable & Chute then turned over the property to this agent in pledge for the payment of their debt to plaintiff, and he shipped it, eleven car loads, to Minnesota Transfer, near St. Paul, sending men with it and having possession of it. To avoid paying freight it was shipped in the name of, and consigned to, Cable & Chute, for when they took the grading contracts it was agreed that their property was to be taken out there and returned free of freight.

On its arrival, April 8, 1891, the defendant, the Minnesota Transfer Railway Company, unloaded and stored the property and fed the horses and mules, and kept it until May 15th following, claiming a lien on it as warehousemen for the expense and their charges, amounting to $489. Meantime, on April 13, 1891, William Hogan commenced an action in the District Court against Cable & Chute to recover $1,500 and interest due him upon a promissory note made by them to him November 25, 1890, and then past due. He made affidavit and garnished the Minnesota Transfer Railroad Company, as having property in their hands belonging to Cable & Chute. John C. Bullitt, Jr., was appointed agent of the Railway Company to make its disclosure, and he stated the facts before a referee who reported the disclosure to the District Court. Meantime, on May 4, 1891, the plaintiff, Cooley, demanded the property, and commenced this action in replevin against the Railway Company, gave bond and took possession of the property. The company answered, claiming a lien for the $489, and stating the garnishment they were under. On June 29, 1891, Cooley agreed with Cable & Chute to take the property absolutely, and allow them $5,000 for it upon the debt for which it was pledged. Plaintiff then sold it, realizing $4,460 for it. Hogan obtained judgment in his suit May 6, 1891, for $1,603.23. He moved the court November 14, 1891, to be permitted to intervene and become a party to this replevin suit. This motion was unopposed, and he intervened, and filed his complaint in intervention. He claimed that plaintiff's mortgage, the

pledge made in Dakota, and the sale on June 29, 1891, were all invalid, fraudulent and void as against creditors; and this was the question litigated at the trial.

The trial court made findings of fact and ordered judgment against plaintiff for a return of the property, or, if a return could not be had, then that the Railway Company recover $489, and interest and costs; and Hogan recover $1,603.23, the amount of his judgment against Cable & Chute, with interest and costs. Plaintiff moved for a new trial, and being denied, appeals.

*A. D. Polk* and *Henry C. James,* for appellant.

The contract of pledge was followed by immediate and continued change of possession. We cannot imagine on what theory the court could find that it was void as to the intervener. He does not claim that his lien was prior, nor does he seek to set aside the transfer to plaintiff as a preference contrary to the insolvency laws. Conceding for the purpose of the argument, that the mortgage was void as to creditors because not properly filed, yet the plaintiff in this case does not claim wholly by virtue of his former mortgage, nor did he by his own act alone, attempt to remove the former taint, if any existed, as in the case of *Stein* v. *Munch,* 24 Minn. 390. The law laid down in *First Nat. Bank* v. *Anderson,* 24 Minn. 435, is applicable here. *Combs* v. *Tuchelt,* 24 Minn. 423; *National Ex. Bank* v. *Wilder,* 34 Minn. 149 .

*John C. Bullitt, Jr.,* for defendant Railway.

To maintain an action of replevin, the plaintiff must have a right to the immediate possession of the property, and this right must exist at the time of the commencement of the action. Before any demand was made by plaintiff, the garnishee summons in the case of *Hogan* v. *Cable & Chute* had been served upon the Railway Company, and delivery was refused upon the ground that the property had been garnished, and upon the further ground that the bill of lading issued by the Omaha Railway Company was not presented at the time of the demand. Cooley was notified of the pendency of this garnishment, and that this proceeding was one of the reasons for refusal to surrender possession of the property to him. It would seem clear that no matter who was the owner of

the property, the defendant was justified in refusing to deliver the same to any one subsequent to the service of the garnishment summons. 1878 G. S. ch. 66, § 167. ·

*Moritz Heim* and *John D. O'Brien*, for intervener.

The intervention of Hogan was proper, and was adjudicated to be proper by the court in making an order allowing the intervention, from which no appeal has been taken. Its propriety was also recognized by the plaintiff in pleading to the complaint of the intervener, and the allowance of said intervention is not assigned as error, nor is any argument attempted upon that point.

The evidence on behalf of plaintiff not only failed to show an actual and continued change of possession of the property under the pretended pledge, but it really showed that there was no visible or outward change of possession at all.

The mortgage was confessedly void as to creditors, and recovery thereon is not insisted upon by plaintiff. After the property had been taken upon the writ of replevin, and after the intervener had acquired an attachment thereon by the service of the garnishee summons, the plaintiff purchased the property from Cable & Chute. This we think was a waiver and relinquishment of any claim that the plaintiff might have, as pledgee of the property. Since the ownership of this property was acquired by plaintiff, subsequent to the intervener's garnishment, it cannot affect the intervener's right, and the plaintiff cannot revive his interest and title as pledgee, in which character he no longer holds, for the purpose of defeating the intervener's claim.

DICKINSON, J. This was an action of replevin to recover forty-three horses and mules which, in the course of transportation by rail from Deadwood, Dak., to St. Paul, had been delivered to the defendant, the Transfer Railway Company, and unloaded, and left in its yards. The possession of the property by the railway company was rightful; at least, until it refused to deliver it to the plaintiff, upon his demand, on the 14th day of April, 1891. The property had been owned by Cable & Chute prior to March 20th of that year. The plaintiff's asserted right to recover it rests upon the alleged fact that at the latter date, at Deadwood, Cable & Chute

had delivered it to the plaintiff in pledge, to secure him for certain indebtedness and liability incurred in their behalf; it being agreed that the plaintiff should take the property to St. Paul, and dispose of it for his reimbursement.

The railway company asserts a lien upon, and right to retain possession of, the property, on account of its charges for feeding and caring for the same, (amounting to $489,) from the time when it was received by it, April 8th, until it was taken by the plaintiff ·in this action of replevin, on the 15th day of May.

While the railway company was so holding the property, and before the plaintiff demanded that it be surrendered to him, William Hogan had commenced an action on contract against Cable & Chute for the recovery of $1,500 and interest, and had caused process of garnishment to be served upon the railway company on account of its holding this property, which Hogan claimed to belong to Cable & Chute. During the pendency of this action of replevin, Hogan was allowed, upon his motion, to intervene, as a party therein, without objection, so far as appears. He had then recovered judgment in his action against Cable & Chute. His contention in this action is that the property belonged to Cable & Chute, and that he secured a lien thereon by virtue of the garnishee proceedings, and that as to him the alleged pledge to the plaintiff was invalid, if any such pledge was made.

The plaintiff, having taken the property by virtue of the process in this action, sold the same.

The court, deciding the case without a jury, found that Cable & Chute "pretended or attempted" to pledge the property to the plaintiff, but that this was void as to creditors, and as to the defendant, and that, as to the intervener, (Hogan,) Cable & Chute remained the absolute owners. Judgment was allowed in favor of the railway company, against the plaintiff, for the recovery of the amount of its charges for keeping, $489, and in favor of the intervener, Hogan, and against the plaintiff, for the recovery of the amount of his (Hogan's) judgment against Cable & Chute. This appeal by the plaintiff is from an order refusing a new trial.

A chattel mortgage had been given by Cable & Chute to the plaintiff, covering some, but not all, of the property here involved, long before the alleged pledge. We deem this of little importance,

for, if we could ascertain from the case what part of this property was included in the mortgage, it does not appear what was the value of the same. The plaintiff's case really rests upon the pledge, rather than upon the prior mortgage.

The case, as between the plaintiff and the railway company, seems plain, irrespective of the question as to the sufficiency and effect of the pledge. When the plaintiff demanded possession of the property, there having been a delay of several days on account of some unadjusted claim of charges for transportation, the defendant was not holding the property in the relation of a carrier, but as a warehouseman, and such had been the case for some six days; and in the meantime, and just before such demand, the garnishment had been made in behalf of Hogan. The garnishment legally charged the company with the responsibility of retaining the property, as in the custody of the law, in order that it might be applied to the satisfaction of Hogan's debt, if he should succeed in maintaining his claim. It excused the company from delivering the property to the plaintiff. Drake, Attachm. 453; *Stiles* v. *Davis*, 1 Black, 101. Whether goods in the possession of a common carrier, and while actually in transit, may be the subject of garnishment, we do not consider. We do not construe the finding of the court to be that the defendant retained the property as a common carrier.

The defendant company had a lien upon the property for its proper charges for keeping it; and the determination of the court, awarding a recovery therefor against the plaintiff, who had replevied and sold it, was justified by the evidence, and was in accordance with the law. Whether the pledge was complete and effectual, or not, the result, in this particular, would be the same.

Different questions are presented, as between the plaintiff and the intervener. As between them, the question is one of priority of rights. If the pledge to the plaintiff was complete and effectual, and was still in force at the time of the garnishment by Hogan, any rights which the latter might acquire by the garnishment would be subordinate to those of the plaintiff as pledgee.

It does not appear on what ground, or for what reason, the court found the pledge to have been void as to Hogan, a creditor of Cable & Chute. If it was because the evidence was deemed insufficient to establish the fact of the pledge having been made at Deadwood,

we should be compelled to say that the court had failed to fully appreciate the force of the evidence; for, as we read it, it is all one way, and was of such a nature as to forbid any other conclusion than that the property was, by Cable & Chute, actually and completely delivered to, and taken possession of by, the plaintiff, to be by the latter retained, and disposed of for his reimbursement. It may be supposed, however, that the court considered that the cir-cumstances connected with its transportation to St. Paul avoided or terminated the pledge, or precluded the plaintiff from asserting his rights as a pledgee, as against Hogan. These circumstances were as follows:

Cable & Chute had taken the property to Deadwood pursuant to some agreement with Streeter & Co., who had some contract or work of railroad construction there. Cable & Chute had a subcontract under Streeter & Co., and their agreement with Streeter & Co. involved an undertaking on the part of the latter to furnish transportation for this property to Deadwood, and back to St. Paul. Cable & Chute had completed their contract, so that they were entitled to call upon Streeter & Co. to have the property returned to St. Paul without expense to them. When the property was pledged to the plaintiff, his agent, who had it in his possession, arranged with Cable & Chute to conceal this fact from Streeter & Co., lest the latter should refuse to abide by their agreement to have it transported back to St. Paul. Hence the shipment was made in the name of Streeter & Co., and Cable & Chute were named as consignees; and Streeter & Co. arranged the matter of transportation so that no charge was made therefor to the plaintiff, nor to Cable & Chute.

This did not avoid or terminate the pledge. The plaintiff em ployed an agent who remained in charge of the property during its transportation to St. Paul. The possession was never in fact restored to Cable & Chute, nor do they appear to have ever claimed to be in possession after they delivered the property to the plaintiff. As between those parties, it is certain that the pledge re-mained effectual. Even if, after the property had been delivered in pledge to the plaintiff, the latter had intrusted it again to the pledgors as his agents or bailees for the special purpose of taking it to St. Paul in his behalf, to be there again restored to him, we

suppose that the pledge would remain good. The possession of the original pledgors, as the agents of the pledgee, would be his possession. *Casey* v. *Cavaroc*, 96 U. S. 467. But, however that may be, this case is stronger for the plaintiff than that just supposed, for the property was not in fact redelivered to the pledgors, but remained, uninterruptedly, in the custody of the plaintiff's agent.

The fact that the plaintiff, for the purpose above stated, employed the names of Cable & Chute as consignees, so that it might appear that the property was shipped for them, did not, as we have said, divest the plaintiff of his pledge. Neither did it subordinate the plaintiff's rights, as pledgee, to the subsequent claim of Hogan under the garnishment, or estop the former from claiming the preference which his pledge secured to him. There is no registry law relating to the pledging of property. If the pledge was effectual, it is not material whether Hogan had notice of it or not. His debt was not created in reliance upon any appearance of continued possession, or of absolute title, in Cable & Chute, by reason of their being named as consignees. It long antedated the transactions here in question. Nor, even if the concealment of the pledge from Streeter & Co., for the purpose stated, was a fraud upon the latter, it would not affect the case of Hogan. It did not concern him in any way. But it is not even apparent that the concealment was a fraud upon Streeter & Co. Their agreement to secure free transportation back to St. Paul was not discharged by the pledging of the property to the plaintiff. In brief, the pledge to the plaintiff was valid, and was prior and superior to any rights acquired by the subsequent garnishment, and there is nothing in the case to estop him from asserting his superior right.

A considerable time after the garnishment, while the plaintiff still held the property, it seems that Cable & Chute sold the same to him for a specified price, which he was to apply as payment on the indebtedness to him. It is contended that thereby the plaintiff waived and lost his rights as pledgee, so that, by reason of the garnishment, the intervener's rights were superior to any remaining in the plaintiff. We cannot so hold. The transfer of the legal title, for a specified price, to be applied on the debt, was not inconsistent with, and did not divest the plaintiff of, the essential

rights which he already had under the pledge; that is, the possession of the property, and the right to dispose of it for the satisfaction of his debt. That right still remained, as against creditors of the pledgor who might have secured attachments subsequent to the pledge. It may be that the added interest which the sale conferred—the legal title—was held subject to the intervening garnishment, and that the plaintiff might be accountable to the intervener for the value of the property in excess of the debt, if there was any such excess. But the case does not present that question.

It is unnecessary to consider whether the claim of the intervener was a proper subject of litigation in this action.

As between the plaintiff and the defendant railway company, the order is affirmed. As between the plaintiff and the intervener, it is reversed.

VANDERBURGH, J., did not take part in this decision.

Application for reargument denied June 7, 1893.

NOTE. The clerk's taxation of costs and disbursements in favor of the appellant, against the intervener, was reduced June 13, 1893, from $278.50 to $213.70, by deducting $64.80 from the amount charged for printing the Paper Book of 214 pages.

(Opinion published 55 N. W. Rep. 141.)