## HEALY-OWEN-HARTZELL COMPANY v. MERRICOURT EQUITY EXCHANGE.[1]

### June 19, 1925.

### No. 24,694.

**By North Dakota statute rights of holders of storage tickets of insolvent elevator superior to those of general creditor who garnishees proceeds of grain in Minnesota.**

    1.  Section 3114, Comp. Laws N. D. 1913, provides that grain on hand in an insolvent elevator shall be first applied exclusively to the redemption of outstanding warehouse receipts. *Held,* to give storage ticket holders a special property in such grain which attends it on shipment into this state so that the rights of a general creditor garnisheeing the proceeds here are inferior to those of the holders of unredeemed storage tickets.

**Holders of tickets not compelled to resort to obligation of surety on elevator's statutory bond.**

    2.  Such a creditor cannot compel the ticket holders to resort first to their remedy on the bond required of the warehouseman by statute for the protection of the owners of stored grain; the obligation of a surety not being a fund or security subject to the process of mar-

[1]Reported in 204 N. W. 527.

shalling; and the remedy itself one not to be used to the detriment of third parties not before the court.

1. See Garnishment, 28 C. J. p. 256, § 353 (Anno).
2. See Marshalling Assets and Securities, 38 C. J. pp. 1370, § 8, 1372, § 10.

Action in the district court for Hennepin county upon a deficiency judgment. The assignee of defendant's storage ticket holders filed his complaint in intervention and the case was tried between plaintiff and intervener upon stipulated facts before Waite, J., who ordered judgment in favor of intervener. Plaintiff appealed from an order denying its motion for a new trial. Affirmed.

*H. V. Mercer & Co.* for appellant.

*W. H. Stutsman,* for respondent.

STONE, J.

Action on a North Dakota judgment, the contest being between plaintiff and intervener over an admitted indebtedness of the garnishee to defendant. The intervener prevailed below. Plaintiff appeals from the order denying its motion for amended findings or a new trial.

Defendant, Merricourt Equity Exchange (to be referred to herein as the Exchange), is a North Dakota corporation which formerly conducted an elevator at Merricourt in that state. It became insolvent not later than September 22, 1922. All of its property, including its elevator, bills and accounts receivable, and excepting only the grain on hand, was sold under the foreclosure of mortgages in plaintiff's favor. There was a deficiency, now represented by the judgment to recover on which, in this state, this action was instituted. The amount remaining due plaintiff is $2,024.91.

On September 23, 1922, when the Exchange was put out of business by the foreclosure, there was in its elevator, either stored or its property, barley, wheat and rye of the aggregate value of about $12,800. Thereafter and before November 17, 1922, all that grain was shipped to the Tenney Company at Minneapolis and there sold in the usual manner, the net proceeds being $12,842.99. Remittances

were made currently to the Exchange and the money applied to the redemption of outstanding storage tickets until on or about October 26, 1922, when plaintiff garnisheed the Tenney Company. The balance then in its hands, due the Exchange, was $5,159.87. The Exchange was selling the grain for the benefit of the holders of its storage tickets and the balance due from the Tenney Company would have been applied to the further redemption of storage tickets, had not remittances been stopped by the garnishment.

1. Intervener is the assignee of the outstanding storage tickets representing grain of the agreed value of $6,311.08. His intervention, simultaneously or nearly so with the garnishment, raised the issue, the only one before us, as to whether plaintiff, a judgment creditor of defendant, or the holders of the storage tickets, are to have a prior right to the fund in the hands of the garnishee. As between the ticket holders and the Exchange, the property rights in the grain, at the time of its shipment to Minneapolis, had been fixed by section 3114, Comp. Laws N. D. 1913, which provides that the storage of grain in an elevator in that state shall be a bailment and not a sale; that in no case shall stored grain be liable to seizure in an action against the bailee, except by owners of warehouse receipts to enforce them; that stored grain in case of insolvency of the bailee shall "be first applied exclusively to the redemption of outstanding warehouse receipts;" and, finally, in the event of insolvency of the bailee, that "grain on hand * * * shall first be applied to the redemption and satisfaction of receipts issued" by the insolvent concern.

Intervener takes position squarely upon that statute as construed in Kastner v. Andrews (N. D.) 194 N. W. 824, and argues that the grain in question, before it left North Dakota, had been subjected to a trust for the benefit of ticket holders; that by force of the statute the grain had become their property, was sold for their benefit and that the proceeds now belong to them as against attaching creditors such as plaintiff. Plaintiff's rejoinder is that the North Dakota statute has no extra territorial effect and that it gives to ticket holders a new, special and local remedy which cannot be enforced by the courts of Minnesota.

On that issue, we hold with the intervener. The insolvency of the Exchange was ascertained before the grain was shipped. Plaintiff made no effort to enforce its claim against the grain by attachment or execution so long as it remained in North Dakota. The statute would have prevented the success of such an attempt. The *property* therein of the ticket holders was established under the statute of North Dakota, the local law. That property right, firmly fixed and indisputably in the ticket holders, we would have to ignore in order to hold against intervener.

That is not giving to a foreign statute extra-territorial effect. It is recognizing something, recognition of which comity always compels, a property right given by the laws of another state, not contrary to the policy of our own, one attached to personal property when removed from that state to this. Compare Keenan v. Stimson, 32 Minn. 377, 20 N. W. 364, and Powell v. G. N. Ry. Co. 102 Minn. 448, 113 N. W. 1017. That right and the resulting obligations attended the grain upon its transportation into Minnesota and take precedence over the equity of a general creditor proceeding here by attachment.

We are not concerned now with the rights of an innocent purchaser who has paid full value for stored grain shipped from a primary market. See Nieter v. The McCaull-Dinsmore Co. 159 Minn. 395, 199 N. W. 85; Torgerson v. Quinn-Shepherdson Co. 161 Minn. 380, 201 N. W. 615; Hoven v. McCarthy Bros. Co. 163 Minn. 339, 204 N. W. 29. The equities of innocent purchasers are superior to those of attaching general creditors. The lien of an attachment or garnishment is subject to the pre-existing rights of third parties. Mansfield v. Stevens, 31 Minn. 40, 16 N. W. 455; Cooley v. Minn. Transfer Ry. Co. 53 Minn. 327, 55 N. W. 141, 39 Am. St. 609.

2. The Exchange had furnished a bond pursuant to section 3111, Comp. Laws, N. D. 1913, conditioned for the faithful performance of its duties as a public warehouseman and its compliance with law, particularly the performance of its obligation to the holders of storage tickets. It is the claim of plaintiff that, by way of marshalling assets, intervener, as representing ticket holders, should be compelled to proceed first against the sureties on that bond, the re-

covery to go in reduction of the amount to which otherwise they are entitled out of the fund in the hands of the garnishee.

That argument ignores the fundamentals of the doctrine it invokes. First, the personal obligation of a surety is not considered a fund or security subject to the equitable process of marshalling. 18 R. C. L. 458. Next, were it otherwise, the primary fund here for the security of the ticket holders is the proceeds of the grain in the hands of the garnishee. The sureties have the right to compel the ticket holders to exhaust that primary fund before proceeding on the secondary liability against them. Willius v. Mann, 91 Minn. 494 (502), 98 N. W. 341, 867. Finally, marshalling is a remedy not used to the detriment of third parties, particularly when those who will suffer are not before the court. Sowell v. Federal Reserve Bank, 268 U. S. 449, 45 Sup. Ct. 528, 69 L. ed. 601. As the learned trial judge so aptly put it, to give plaintiff any benefit of the bond, would be in effect to charge the sureties "with the payment of defendant's debt to plaintiff, as well as to the intervener, and this is not covered by the obligation." Securities are not so marshalled against the rights of third parties. 26 Cyc. 931.

Order affirmed.