CASE 50—ORDINARY—JANUARY 20.

# Sutherland v. Second National Bank of Peoria.

APPEAL FROM LOUISVILLE CHANCERY COURT.

1. A consignor of goods, after they have passed from the hands of the railroad company with which the contract of affreightment was made, into the hands of another company, has the same right to change their destination while *in transitu*, by taking a new bill of lading, as if the first company had a continuous line to the place of destination.

2. Such new bill of lading is valid, when called in question between a *bona fide* holder and one claiming a lien by virtue of an attachment.

3. The service of an attachment upon a railway company creates no lien. upon property not within the county at the time it is served.

R. & L. BUCHANAN FOR APPELLANT.

There had been no valid pledge of the grain to the appellee, and if there had been, still the appellants' attachment gave them a prior lien upon it.    (2 T. R., 75; 70 Eng., C. L. R., 687; Abbott on Shipping, 323; 4 Denio, 489; Lam v. Robinson, 18 B. Mon., 632; 2 Met., 287; 2 Duv., 485; 9 Bush, 119; Civil Code, subsec. 3, sec. 203, sec. 212; 24. Penn. R., 23.)

W. O. & J. L. DODD FOR APPELLEE.

1. Bartlett & Co. had the right to change the destination of the grain while it was in the hands of the Ohio and Mississippi Railway.

2. The attachment held nothing, because the oats were not within the county at the time of service.    (4 Bush, 334; Davis v. Watts, MS. Opin., 1876; 24 Penn. Rep., 23; 1 Barr, 223; 51 Penn., 244; 4 Kansas, 378.)

JUDGE COFER DELIVERED THE OPINION OF THE COURT.

January 2, 1879, the appellant brought this suit in the Louisville Chancery Court against S. C. Bartlett & Co., non-

residents of the state, and sued out an attachment against their property. The order of attachment was executed on that day on the Ohio and Mississippi Railway Company by delivering a copy thereof to its agent in the city of Louisville, and by summoning the company as a garnishee, but without giving to the company a notice specifying the property attached. January 4 an alias attachment was issued and placed in the hands of the marshal, who, on the 8th, levied it on one car-load of oats in the possession of the Ohio and Mississippi Railway Company. The marshal took the oats into his possession, and it was subsequently sold under order of the court. Subsequently the appellee filed its petition, claiming that it had a lien on the oats.

The pleadings and evidence disclose the following facts:

December 24, 1878, S. C. Bartlett & Co. delivered a carload of oats to the Peoria, Pekin and Jacksonville Railroad Company, at Peoria, Illinois, consigned to the appellant at Louisville, and took from the railroad company a through bill of lading. They then drew upon the appellant against the shipment, and he declined to honor the draft. Being informed of that fact by telegraph, Bartlett & Co. caused the oats to be stopped *in transitu* on the second day of January, and on that day surrendered to the railroad company the bill of lading, and took another, consigning the oats to "S. C. Bartlett & Co., notify Verhoff & Strater, Louisville, Ky." They then drew on Verhoff & Strater, and attaching the bill of lading to the draft, on the third of January sold the draft to the appellee, who had no notice of the attachment of the appellant at Louisville.

The appellee transmitted the draft to Louisville, but Verhoff & Strater refused to honor it, assigning as a reason that

the oats had been attached, and they did not wish to become involved in the controversy.

Upon these facts the court below adjudged in favor of the appellee, but allowed the marshal's costs for selling the oats to be deducted from the proceeds, and refused to render judgment against the appellant on a counter-claim for damages for the illegal seizure of the oats. From that judgment both parties appeal.

Counsel for the appellant contend that, at the time the second bill of lading was issued, the oats had passed out of the possession of the Peoria, Pekin and Jacksonville Railroad Company into the possession of the Ohio and Mississippi Company, and therefore the new bill of lading was invalid and ineffectual to invest the bank with a valid lien on the oats.

As authority in support of this position, counsel cites that class of cases in which it has been held that a bill of lading signed by the master of a vessel before receiving the possession of the goods, does not bind the owners.

Those cases are not analogous to this. The oats had been received by the railroad company to be forwarded to Louisville, and was in the custody of the Ohio and Mississippi Company when the new bill was signed. The possession of the latter company was held under and by virtue of the contract of affreightment made with the Peoria, Pekin and Jacksonville Company, and the consignors had the same right to change the destination of the oats while *in transitu* that they would have had if the company receiving the oats from them had had a continuous line to Louisville. There is no question here between the consignor or consignee and the carrier, and no reason is perceived why the new bill of lading is not valid when called in question between a *bona fide* holder and .

one claiming a lien on account of an attachment against the goods of the consignor.

The bill of lading authorized the holder to demand the oats from the carrier, and, being a recognized symbol, its delivery to the bank was a symbolic delivery of the oats, and constituted a valid pledge.

But it is contended that the service of the first order of attachment on the Ohio and Mississippi Railway Company created a lien on the oats then in its possession, and as that service was prior in time to the pledging of the oats by the delivery of the bill of lading to the bank, the appellant has the eldest and superior lien.

At the time the first order of attachment was served S. C. Bartlett & Co. were non-residents of the state, and the oats was in the state of Illinois. No personal service could be had upon the defendants, nor could the goods be seized under the order of attachment. The consignors still had the right to stop the oats *in transitu* or to alter its destination, and, in our opinion, the service of the attachment on the railway company while the oats was beyond the limits of this state created no lien. True, the Ohio and Mississippi Railway Company was within the jurisdiction of the court, but the property sought to be reached was without its jurisdiction and the laws of the state, and the process of the courts here could not reach it nor compel the carrier to bring it hither; and as the court would have had no power to subject the property unless brought within its jurisdiction, its process could not create a lien upon it until it came within the county where the order of attachment was in the hands of the officer.

Counsel cite the case of Childs v. Digby (24 Penn. St., 23) in support of a contrary conclusion, but that case was

overruled in Pennsylvania Railroad Company v. Rennock (51 Penn., 244).

The alias order of attachment, issued on the fourth of January, was in the officer's hands when the oats arrived in Louisville on the 6th, and was levied on the 8th, and created a valid lien, subject, however, to the prior lien of the bank.

It results from this conclusion that the seizure of the oats under the attachment was wrongful, and as the proceeds were not sufficient to pay the debt for which the bank had a lien, the court erred in allowing the marshal's fee to be retained out of the price.    He made the seizure and sale at appellant's instance, and must look to him for his costs.

The bank had no right to set up a counter-claim in this case for the damages resulting from the seizure of the oats; but as the judgment dismissing the counter-claim absolutely will be a bar to a suit to recover such damages, the judgment must be reversed on the cross-appeal, and the cause is remanded, with directions to cause the whole proceeds of the sale to be paid over to the bank, and to dismiss the counter-claim without prejudice.