Gantt, P. J.
The plaintiff resides in Kansas City, Missouri. The defendants- Hoick & Company live at Eagle Pass, Texas. On the twenty-ninth of September, 1892, plaintiffs commenced an action against defendants to recover $600, and sued out an attachment in aid thereof and caused the Missouri, Kansas & Texas Railway Company to be summoned as garnishee about 6 o’clock p. m. of the same day. At the next term of the court interrogatories were duly propounded by plaintiff, and the garnishee, the appellant herein, made its answer:
“That at the time of the service of the summons of garnishment herein it had in its possession a car load of lard which had been delivered to this garnishee by the Armour Packing Company, at Kansas City, Missouri, consigned to O. Hoick & Company, at Eagle Pass, Texas, to be transported by this garnishee as a common carrier and by it as such carrier to be delivered to said consignee at said destination of Eagle Pass in the state of Texas, over and by means and way of this garnishee’s railroad, and its connecting line, that at the time of the service of summons herein, this garnishee had issued its bill of lading, covering said lard, to said Armour Packing Company, consign- *668 or thereof, and the said car load of lard was in the course of transportation between said points by this garnishee as a common carrier, as aforesaid; and this garnishee further answers that it did not at said time and has not any time since had in its possession any other belonging to or consigned to said C. Hoick & Company or to Hoick and Company, or either of them.”
To this answer plaintiff filed a denial admitting that the garnishee had in its possession the car load of lard, when served with the garnishment but denied that said lard was in transit, and averred that it was held by the garnishee in its yards, preparatory to shipment to defendants at Eagle Pass, Texas, and was not accessible to the sheriff of Jackson county, Missouri, and, therefore, could not be taken into his possession under the writ of attachment.
The garnishee replied to this denial and admitted that at the time of the service of the garnishment, it had in its possession a car load of lard consigned to Hoick & Company; and, then set up that the lard was accessible to the sheriff of Jackson county, Missouri, before it left Kansas City, Missouri. It then set up that the garnishee did not have possession of the lard until it reached Paola, Kansas, that the Kansas City, Port Scott & Memphis Railway Company, known as the “Gulf,” or “Scott” Road, had possession of the lard at the time of the service of the writ of garnishment upon it. That the Gulf road makes the haul of all of garnishee’s goods from Kansas City, Missouri, to Paola, Kansas, and that the Gulf road owns and controls the yards in which this car load of lard was placed by the Armour Packing Company. It also set up that the lard was “in transit” when respondent was garnished.
At a trial of these issues made up by the pleadings, and the motion, to dismiss the garnishee, before *669 the judge, without a jury, there was a finding for the plaintiff, and in rendering a judgment as required by the statutes, the court found that at the time respondent was garnished, it had in its possession a car load of lard, the property of defendants, and the court further stated in the judgment, that it found from the evidence, that the car containing said lard was not in transit, and that said lard was subject to garnishment.
Without material contradiction the evidence disclosed that at 12:15 p. m'., September 29, 1892, the Armour Packing Company, at Kansas City, Missouri, turned over on their packing house track a car load of lard, to a switching crew of the Memphis and Fort Scott Railroad and by this crew it was hauled into the yards of the Memphis road at Kansas City, that thereupon Mr. Norton, the agent of the garnishee, at Kansas City, issued its through bill of lading to Armour Packing Company for said car, consigning it to Hoick & Company, Eagle Pass, Texas. That by virtue of a traffic agreement between the Grulf and Memphis Railway Company, and the Missouri, Kansas & Texas Railway Company, the Grulf road hauls all goods received by the Missouri, Kansas & Texas Railway Company at Kansas City, for points on the Missouri Kansas & Texas Railway, to Paola, Kansas. That the Missouri, Kansas & Texas issues its through bills of lading from Kansas City to such points. That the G-ulf issues no bills of lading for goods it hauls under this agreement from Kansas City to Paola.
Mr. Norton also stated that he was served with the writ of garnishment about 6 o’clock the evening of September 29, 1892, and that the evening trains pull out about 7:15 p. m. ; that the cars before they leave are in the Ft. Scott yards in Kansas City, Jackson county, Missouri, about a half mile south of his office. The arrangement of the Scott road with appellant is, that *670 the appellant pays the Scott road so much per car for hauling from Kansas City, Missouri, to Paola, Kansas. The reason the appellant didn’t set out the car of lard when it was garnished was because the agent, Norton, didn’t look for a car of lard. He, knowing the plaintiffs and defendants were grain men, only looked for grain. Mr. Norton did not know where the car of lard was when appellant was garnished, only that it was brought from Armour’s and placed in the yards.
He further states that this particular car of lard left Kansas City at 8 o’clock the night of September 29, 1892; that it was standing in the yards from 6, when the defendant was garnished, to 8 o’clock that evening; that it had not yet started on its trip; that the appellant gives bills of lading from any outside point into Kansas City, Missouri; that the number of car containing the lard in question was 3020 and was a car belonging to appellant; and that he had absolute control of this car of lard, and could have ordered it held back if he wanted to; that it was stopped by him at Dennison, Texas, and bonded by defendants; that appellants issue maps and timetables showing the Missouri, Kansas & Texas Railway Company runs into Kansas City, Missouri.
Mr. McVay, a switchman for the Scott road, says: That Armour has a private track running from the packing house to the Scott yards; that he hauled a car of lard in dispute from Armour’s at 12:15 on September 29, 1895, and it reached the yards sometime between that time and 6 o’clock; that no record is kept of the track the car is on and no one knew where this car of lard was on September 29, 1895; that it would take an experienced man two hours to go over the yards and find a particular car, and that it would take an inexperienced man much longer; that the car *671 was taken from Armour’s to the yards to be made up into a train.
Mr. Messenger, the yard-master, testified that a ear of lard sent over to the yards at 12:15 p. m. would not be made up into a train until about 6 p. m. That as soon as they got enough cars to make a train, say fourteen cars, they couple them together and send them into the yards, until a schedule time for them to be pulled out. And then the engine is attached and at the schedule time the train is pulled out.
The garnishee prayed instructions as follows:
“1. The court declares the law to be that under the pleadings and the evidence in this case the Missouri, Kansas & Texas Railway Company can not be held as a garnishee in this proceeding, and it must be discharged.
“2. The court declares the law to be that a common carrier is compelled, by the constitution and laws of the state of Missouri, to serve all persons' impartially, and is compelled to receive merchandise offered for transportation, and to deliver the same to the consignee,or his assignee,at the place of destination,without any notice as to who is the person entitled to receive such merchandise, prior to proper demand therefor at the place of delivery, and, therefore, it is contrary to public policy that a common carrier should be charged as a garnishee on account of property delivered to it for transportation, and that to attempt to so charge a common carrier would be violative of the constitution and laws of the state regulating the rights and duties of common carriers.
“3. The court declares the law to be that if the evidence in this case establishes that the Missouri, Kansas & Texas Railway Company did not own or operate any track or tracks in and into Kansas City, Missouri, or Kansas City, Kansas, and that business destined for *672 transportation over the said Missouri, Kansas & Texas Railway was handled in said cities above named and from there to Paola, Kansas, by the Kansas City, Fort Scott & Gulf Railway Company, and was turned over and delivered to the said Missouri, Kansas & Texas Railway Company at said Paola, Kansas, and that the said Missouri, Kansas & Texas Railway Company did not have control or authority over the men who were engaged in handling such business prior to its arrival in Paola, Kansas, then said Missouri, Kansas & Texas Railway Company can not be held as garnishee on account of any property which may have been in charge of said Kansas City, Fort Scott & Gulf Railway Company or its employees.
“4. The court also declares the law to be that under the evidence in this case the car load of lard- in question was in course of transportation from the time it was loaded upon the car at the Armour Packing Company’s warehouse, and the Missouri,- Kansas & Texas Railway Company can not be held as garnishee on account of said consignment of lard by the Armour Packing Company to C. Hoick & Company, nor on account of the issuance of a bill of lading by said railway company, whether the summons in garnishment was served before or after said car load of lard left Kansas City, Missouri, or Kansas City, Kansas.”
The court refused all of them, and the garnishee excepted. The plaintiff .did not ask any instructions.
I. An exceedingly interesting brief has been filed in behalf of the appellant, the garnishee, but it will not be necessary for us' to pass upon some of the questions suggested by the argument.
The broad proposition is laid down that the railway company, though it admits it had in its possession a car load of lard in Jackson county, Missouri, belonging to the defendants in the attachment, at the time *673 the writ of garnishment was duly served upon it, is not subject to garnishment because this lard had been delivered to it for transportation. The argument in brief is that the nature of the possession of a carrier is such that from motives of public policy it should not be held liable as a garnishee on account of its possession of property delivered to it for shipment; that the law imposes upon the carrier the duty of transporting such goods as may be tendered for that' purpose, and to subject it to garnishment must result in great inconvenience to the carrier and that it would often be difficult for it to answer intelligently.
By positive 'statutory provisions, garnishment of railroad and other corporation carriers is permitted. Chapter 74 and section 543, chapter 10, R. S. 1889. We are unable to see any good reason why a common carrier should not be liable to garnishment in the same manner as other bailees, unless the nature of its contract is such that a judgment against it would be no protection against a claim by its bailor or consignor.
This claim of exemption from garnishment was met by the supreme judicial court of Massachusetts in the case of Adams v. Scott, 104 Mass. 164, in these words: “But we are of opinion that such judgment would be a sufficient excuse to the trustee [garnishee] for a failure to deliver according to his contract. The doctrine of the common law, that a carrier is responsible for all losses, except those occurring by the act of Glod or a public enemy, has no application to a case like the present. There has been no loss, but the defendant’s property has been sequestrated by the law, to be applied to his use and benefit. Every man holds his property subject to be attached, and whenever property is attached in a suit against -the owner, and taken into the custody of the law, it excuses the person having possession of it from performing his promise, express *674 or implied, to deliver it to the owner. * * * The necessary effect of every trustee process is, by diverting the property to the payment of the creditor, to prevent the trustee from strictly performing his contract with the defendant.” ■ In that case the garnishee was the Adams Express Company, and the property attached, a money package.
Why should a defendant in attachment, whose property is found in the hands of a carrier, be more favored than one whose property is seized in the hands of a private individual or corporation who is not a carrier? The remedy is drastic but it is often the only means of enforcing the payment of a debt and the inconvenience to which the bailee is subjected is compensated in proper allowances for his time and counsel fees. But if not, it can not be allowed to outweigh the. end in view, the subjection of the defendant’s property to the payment of his debts. Various decisions are cited by counsel for garnishee but they do not meet the question at issue.
In Bates v. Railroad, 60 Wis. 296, the facts were undisputed and showed that the goods were not in the state of Wisconsin when the garnishment was served but were in the state of Illinois, and the supreme court held that notwithstanding the general language of the' garnishment act, the property in the hands of the garnishee or under his control must be limited to the property within that state. We have no such question under consideration here. In this case the property was in the county and state in which the court sat and in which plaintiff resided.
The court in that case also discussed the question whether a common carrier could be held liable upon a garnishee summons for personal chattels in its possession in actual transit at the time the summons was served and held that it could not, but expressly declined *675 to decide whether goods in a depot of a railway station in that state, either before transit, or after, and awaiting delivery after their arrival at the place of delivery, would be subject to garnishee process. We are relieved from deciding this point also by the finding of the circuit court that this car of lard was not in transit when the writ of garnishment was served upon defendant, a finding justified by the evidence.
Another case relied on is Illinois Central R. R. v. Cobb, 48 Ill. 402, in which the court held that when property was in actual transit, and had left the county in which the writ was served before it was served on the company the company could not be held on the garnishment, but in that case Beeese, C. J., said: “When the goods are in the depot of a railway company, in the county in which the attachment proceedings are instituted, there could, perhaps, be no objection to such process, but on this point we express no definite opinion.”
The facts of this case do not show a case of actual transit at the time of the garnishment. The car had simply been delivered to defendant in its yards at Kansas City and was awaiting shipment.
Having admitted its possession of the lard belonging to defendants at Kansas City and the evidence all concurring that it issued its bill of lading therefor from Kansas City to Eagle Pass, and that it also constantly took consignments into Kansas City and had a traffic arrangement with the Grulf by which it was enabled to thus accept and forward all matter entrusted to it for transportation, it can not be heard to say that it did not have the possession. Having adopted Kansas City as a station on its line and entered into the contract of carriage therefrom, it was estopped from denying its possession. For the purpose of this shipment and *676 under its traffic arrangement with the Grulf, that portion of the Ghilf from Kansas City to Paola and its yards at Kansas City became, as to shippers over its road and those claiming under or against them, a part of the garnishee’s road. Emerson v. Railroad, 111 Mo. 161. Accordingly we find nothing which exempts the garnishee from the garnishment act. The right of stoppage in transitu does not arise on this record.
II. As to the claim that our statute impinges upon the right of congress to regulate commerce between the states, we confess our inability to see how this statute of garnishment can be distorted into an attempt of that kind. There is no federal question properly raised in this record. The judgment is affirmed.
Burgess and Sherwood, JJ., concur.