## PITTSBURGH, CINCINNATI, CHICAGO & ST. LOUIS RAILWAY COMPANY *v.* COX ET AL.

[No. 5,024. Filed January 3, 1905. Rehearing denied March 8, 1905. Transfer denied October 12, 1905.]

1. GARNISHMENT.—*Carriers.—Railroads.—Rights of Garnishee as against Principal Debtor.*—A railroad company is liable to garnishment, and if a judgment is rendered against it in such a proceeding, it may defend an action against it by the principal debtor in another state by setting up such judgment in such garnishment proceedings. p. 295.

2. CARRIERS.—*Railroads.—Seizure of Goods in Custody of, by Officer.*—A railroad company is not liable, in the absence of fraud or collusion, for the seizure, by an officer, of goods in its custody. p. 295.

3. GARNISHMENT.—*Carriers.—Railroads.—Property within Jurisdiction of Court.*—A railroad company is liable in garnishment proceedings for goods received, the transit of which has not begun, and for goods held at destination awaiting delivery, where such property is within the jurisdiction of the court issuing the process. p. 295.

4. GARNISHMENT. — Carriers. — Railroads.—Statutes.—Goods in Transit without the Jurisdiction of the Court.—A railroad company is not subject to garnishment where the goods in its custody are in transit, not actually seized by an officer, and without the jurisdiction of the court issuing process, since by statute (§951 Burns 1901, Acts 1897, p. 233) a garnishee can not be compelled to perform any contract in any different manner from what it is compelled to do for the defendant.   p. 295.

5. SAME.—Carriers.—Railroads.—Collusion.—Where goods owned by defendants were fraudulently consigned by third parties to such third parties as consignees in order for such owners to evade legal proceedings, but the garnishee railroad company knew nothing of such facts but supposed such third parties were the real owners, collusion by such company is not shown. p. 298.

From Henry Circuit Court; *John M. Morris,* Judge.

Action by Arthur L. Cox and others against the Pittsburgh, Cincinnati, Chicago & St. Louis Railway Company and others. From a judgment in favor of plaintiffs, defendant company appeals. *Reversed.*

*John L. Rupe* and *L. P. Newby,* for appellant.

*Fred C. Gause* and *William A. Brown,* for plaintiff appellees.

ROBINSON, P. J.—Action in attachment, in which a garnishee summons was issued against appellant; the property in appellant's possession being then in this State, but in transit to a place without the State.   On April 9, 1901, appellees Fleischman and Currie executed to appellees Cox, Lamb and Beeson their promissory note for $1,163.38, payable in ninety days, and, to secure the note, executed a chattel mortgage on some horses, harness and wheel scoops in Wayne county.   The mortgage was duly recorded April 11.   No payment having been made on the note, on Sunday, May 19, 1901, the payees filed their complaint, and an affidavit stating that the makers of the note were nonresidents; that on the morning of that day the makers had loaded the property into one of appellant's cars and were shipping it to Chicago, Illinois, with the fraudulent purpose of cheat-

ing the plaintiffs out of their claim, and that defendants owned certain personal property then in the custody of the Cleveland, Cincinnati, Chicago & St. Louis Railway Company, in Henry county. An undertaking in attachment was filed, and also an affidavit that plaintiffs believed that appellant had in its custody and possession and in transit from Wayne county, Indiana, to Chicago, Illinois, the above property, and by reason thereof the sheriff of Henry county could not attach the same. A summons in garnishment was issued and served at 6 o'clock p. m. May 19, 1901, by reading and delivering a copy to A. R. Sligar, appellant's station agent at New Castle, Indiana. It is further found that on Saturday night, May 18, 1901, James Lee and one Freeman delivered to appellant at Greensfork, in Wayne county, twenty-five horses, two wagons, two buggies, twelve sets of double harness and a box of personal effects. On Sunday morning, appellant, through its station agent, loaded the property into two cars, one of which was consigned to James Lee, and the other to Lee and Freeman, Chicago, Illinois, and a regular bill of lading for each car was issued as received from Lee and Freeman. These bills of lading constituted an agreement between the shipper and appellant safely to transport the property to Chicago, Illinois, and deliver the same to the consignee. The agent at Greensfork did not know either Fleischman or Currie, nor Lee or Freeman. The shippers of the property were Fleischman and Currie, who shipped it under the assumed names of Lee and Freeman, intending to have it delivered to themselves under the assumed names, but appellant had no knowledge of such facts. The train on which the property was shipped left Greensfork for Chicago about 6 o'clock a. m. May 19, 1901, and when the summons was served on appellant the train was in Indiana, somewhere between Logansport and Chicago; the former place being eighty-one miles northwest of New Castle, Indiana. Appellant's road, in its course, runs about fifteen miles from New Castle before it

passes out of Henry county. Appellant's agent at New Castle had no knowledge of the shipment or of any of the transactions above mentioned. Neither Fleischman, Currie, Lee nor Freeman accompanied the property in transit, but an employe of theirs did. The train was a regular through freight-train, due to arrive at Chicago about 3 or 4 o'clock a. m., May 20. Appellant had no knowledge of Fleischman and Currie, or that they had any interest in the property. Upon the arrival of the property in Chicago, the parties who had shipped it in the names of Lee and Freeman demanded the same from appellant, and the same was delivered to them on May 25, 1901. Appellant owed Fleischman and Currie nothing, and had no other transaction with them than as above set out. The attaching creditors tendered appellant an indemnity bond satisfactory to appellant's local officers, but the property was delivered to the consignees at Chicago, May 25, and an indemnity bond taken there. The mortgage contained the usual covenants against removing the property, and the mortgagee's right to take possession and sell it and apply the proceeds in payment of the debt. The property shipped was part of the mortgaged property, and was worth $1,200.

Upon a conclusion of law in the mortgagee's favor the court rendered a personal judgment against Fleischman and Currie and appellant.

All the errors assigned present practically the same question, that is, when, if at all, is a common carrier required to answer as garnishee as to property in its possession for transportation only, and which at the time the action is brought is in actual transit.

Section 943 Burns 1901, Acts 1897, p. 233, authorizes the making of any person a garnishee defendant when such person "has property of the defendant of any description in his possession or under his control; * * * or has the control or agency of any property, moneys, credits or effects."

It must be admitted that a railroad corporation is subject
to garnishee process, and that in a proper case it must be
held to respond as other corporations or an individ-

1. ual. And in an action against the company it may
successfully plead that in an action in another state
against the plaintiff, as principal, and the company, as gar-
nishee defendant, a judgment was rendered against the
company. See *Terre Haute, etc., R. Co.* v. *Baker* (1889),
122 Ind. 433; *Chicago, etc., R. Co.* v. *Meyer* (1889), 117
Ind. 563; *Ohio, etc., R. Co.* v. *Alvey* (1873), 43 Ind. 180.

And while by statute (§§5185, 5190 Burns 1901,
§§3925, 3926 R. S. 1881) a railroad company is required
to receive and transport property offered for ship-

2. ment, and must respond in damages for its failure
to do so, yet it is excused from liability for not
transporting and delivering property when, without fault
or collusion on the carrier's part, the property is seized
by legal process and taken out of its possession. See *Ohio,
etc., R. Co.* v. *Yohe* (1875), 51 Ind. 181, 19 Am. Rep. 727;
*Indiana, etc., R. Co.* v. *Doremeyer* (1898), 20 Ind. App.
605, 67 Am. St. 264.

If the property is in possession of the carrier, and the
transit has not yet begun, or is completed, and is held by
the carrier, either at the place of shipment or the

3. place of delivery, and the property is within the
jurisdiction of the court issuing the process, there is
no reason for holding that the carrier is not subject to gar-
nishee process the same as individuals or other corpora-
tions. See *Landa* v. *Holck & Co.* (1895), 129 Mo. 663,
31 S. W. 900, 50 Am. St. 459; *Stiles* v. *Davis* (1861), 1
Black 101, 17 L. Ed. 33; *Cooley* v. *Minnesota, etc., R. Co.*
(1893), 53 Minn. 327, 55 N. W. 141, 39 Am. St. 609.

But where the property is in actual transit, as in this
case, a different rule should be applied. It is fundamental,
that if property is arrested by a summons in garnish-

4. ment, it is subject to all the rights of the garnishee.
Common carriers, under ordinary circumstances,

are required by law to receive and transport such property as is delivered to them, and they can discharge this duty only by carrying the property according to their contract. If the general rule is declared that a carrier may be made a garnishee for property in actual transit and beyond the reach of the attaching officer, it would necessarily result in the interference with the prompt discharge of the duty to carry the property of other persons who are not parties to the controversy. A railroad company can not properly discharge the duties imposed upon it as a common carrier. if it be required to stop its trains at any time or place, and select out and care for, at its own·risk and expense, property in dispute, in a controversy about which it knows nothing, and between parties to neither of whom it is indebted and with neither of whom it has ever had any transaction, except the receipt from one of them of property for the purpose of transportation only. It is provided by statute (§951 Burns 1901, Acts 1897, p. 233) that "The garnishee shall not be compelled in any case to pay or perform any contract in any other manner, or at any other time than he would be bound to do for the defendant." It would seem that under this statute appellant was bound to deliver the property only at the place designated in the contract between it and the shippers, who were the defendants, and that it could not be required to stop its train and take the property out of the car and deliver it at some other place. It is quite true the mortgagees might have stopped the property while yet in this State, but this should have been done by taking actual possession of it through a proper proceeding. When appellant had delivered the property at Chicago, it had performed the contract of shipment as it would have been bound to perform it for the defendants. But after it had arrived at Chicago it was not within the jurisdiction of the courts of this State, and, as said in *Stevenol* v. *Eastern R. Co.* (1895), 61 Minn. 104, 63 N. W. 256, 28 L. R. A. 600: "Certainly the garnishee could

not be required to bring it back into this state for the purpose of subjecting it to the process of our courts."

In *Illinois Cent. R. Co.* v. *Cobb* (1868), 48 Ill. 402, it is held: "It is not their [common carriers'] business, nor is it their interest, to know to whom the various articles belong, nor should it be required of them that conflicting claims to the property entrusted to them should be adjusted through controversies, the burden, annoyance and expense of which they must bear. * * * When the property has left the county and is in transit to a distant point, though on the same line of railway, it would be unreasonable to subject the company to the costs, vexation and trouble of such a process, merely because it had received to be carried that which the law compelled it to receive and carry." See, also, *Michigan Cent. R. Co.* v. *Chicago, etc., R. Co.* (1878), 1 Ill. App. 399; *Montrose Pickle Co.* v. *Dodson, etc., Mfg. Co.* (1888), 76 Iowa 172, 40 N. W. 705, 14 Am. St. 213, 2 L. R. A. 417; *Bates* v. *Chicago, etc., R. Co.* (1884), 60 Wis. 296, 19 N. W. 72, 50 Am. Rep. 369; *Bingham* v. *Lamping* (1855), 26 Pa. St. 340, 67 Am. Dec. 418; *Lawrence* v. *Smith* (1864), 45 N. H. 533, 86 Am. Dec. 183; *Sutherland* v. *Second Nat. Bank* (1880), 78 Ky. 250; *Western Railroad* v. *Thornton* (1878), 60 Ga. 300; *Bowen* v. *Pope* (1888), 125 Ill. 28, 17 N. E. 64, 8 Am. St. 330; *Pennsylvania R. Co.* v. *Pennock* (1865), 51 Pa. St. 244, 254; *National Bank* v. *Furtick* (1897), 2 Marv. (Del.) 35, 69 Am. St. 125, note.

In *Montrose Pickle Co.* v. *Dodson, etc., Mfg. Co., supra,* it is held that property actually outside the state and in custody of a common carrier, who resides within the state, can not be reached by garnishing the carrier within the state. *Sutherland* v. *Second Nat. Bank, supra,* holds that the service of an attachment upon a carrier creates no lien upon property outside of the county. In *Bates* v. *Chicago, etc., R. Co., supra,* the garnishee summons was served upon an officer of the corporation who had no knowledge

of the fact that the company had any property of the defendant in its possession and whose business did not require him to have any knowledge upon that subject; and had at hand no ready means of ascertaining the fact that it had any such property, and within two and one-half hours of the service of the process the property was, without notice, delivered to the person entitled to receive it under the contract by which the company held possession when the summons was served, at a place nearly one hundred miles from the place where the officer was served with the summons. It further appears that the property was out of the state when the garnishee summons was served. In this case it was held that the service was insufficient to charge the company as garnishee and that public policy and the proper discharge of the duties imposed upon common carriers of personal chattels placed in their possession for carriage do not permit the carrier to be held liable upon a garnishee summons for property in its possession, in actual transit at the time the summons is served.

Moreover, in the case at bar, the findings show that the property was shipped by Lee and Freeman and consigned to Lee and Lee and Freeman and the bills of lading were so issued. It is true that the court finds that the property was in fact shipped by Fleischman and Currie, and consigned to themselves in the names of Lee and Freeman, but it is also found that appellant had no knowledge of this. Nor is there anything to show that appellant knew or had any means of knowing of any fraudulent purpose in the shipment of the property. It is not shown that appellant had any means of knowing that Fleischman and Currie owned the property, but it is expressly found that appellant had no knowledge of these parties or that they had any interest in the property. The agent upon whom the writ was served had no knowledge of the facts, nor does it appear that any agent of appellant had such knowledge. So far as disclosed by the finding,

appellant had the right to rely upon the title to the property being in the consignees. After the shipment, the consignees in the bills of lading had *prima facie* the legal control and possession of the property. By the writ it was intended that appellant should be legally charged with the responsibility of retaining the property of Fleischman and Currie then in its possession, as in the custody of the law, that it might be applied to the satisfaction of the mortgagees' debt if they succeeded in establishing their claim. As there was no actual seizure of any goods in appellant's possession as the property of Fleischman and Currie, the only effect the service of the garnishee summons could have would be a notice to appellant to retain in its possession any property which it knew, or which the law charged it with the duty of knowing, belonged to Fleischman and Currie. What evidence had appellant, when the writ was served, and before the property reached its destination, that it had any property of the defendants in the attachment? There are no facts showing that appellant knew, or had any means of knowing, that it had such property in its possession; nor are any facts disclosed which overthrow the presumption, upon which appellant could act, that the property belonged to the consignees named in the bills of lading. See *Butler* v. *Pittsburgh, etc., R. Co.* (1897), 18 Ind. App. 656. It does not seem that, under such circumstances, it would be a reasonable rule to require the carrier to stop its train, disregard for the time being its duty as a carrier to other shippers, and determine at its own risk and expense whether the parties who shipped the goods were or were not in fact the real owners. See *Bates* v. *Chicago, etc., R. Co., supra; Walker* v. *Detroit, etc., R. Co.* (1882), 49 Mich. 446, 13 N. W. 812; *Edwards* v. *White Line Transit Co.* (1870), 104 Mass. 159, 6 Am. Rep. 213.

In the case last cited, goods were taken from a carrier by an officer under an attachment against a person who was not their owner, and it was held that this was no defense

to an action against the carrier for breach of his contract to deliver the goods. Counsel for appellee cite the cases of *Adams* v. *Scott* (1870), 104 Mass. 164, and *Landa* v. *Holck & Co.* (1895), 129 Mo. 663, 31 S. W. 900, 50 Am. St. 459, as sustaining the right to hold, by garnishee process, goods in the hands of a common carrier while in transit. The case of *Adams* v. *Scott, supra,* does so hold, but it is the only case to which we have been cited or which we have found that sustains the doctrine. In *Landa* v. *Holck & Co., supra,* the property was in a car awaiting shipment, was in the county and state in which the court sat and in which the plaintiff resided, and was not in transit when the writ of garnishment was served. The better reasoning and weight of authority exempt the carriers from liability as a garnishee in a case like that at bar. Upon the facts found, a conclusion of law should have followed in appellant's favor.

Judgment reversed, with instructions to restate the conclusions of law.