A. C. L. HAASE & SONS FISH COMPANY, Respondent, v. THE MERCHANTS' DESPATCH TRANSPORTATION COMPANY, Appellant.

St. Louis Court of Appeals, November 2, 1909.

1. COMMON CARRIERS: Through Shipment: Liability for Negligent Injury En Route. Where a carrier issued a through bill of lading in Liverpool, by which it agreed to transport certain articles from that port to Boston by a ship and from the latter point to East St. Louis by rail, it became a common carrier for the entire route, and was liable for the negligence of any carrier which transported the property under an arrangement with it.

Fish Company v. Transportation Co.

2. **PLEADING: Exhibits not Part of Pleading to Which Attached.** An exhibit attached to a petition is not a part of it. Neither will such an exhibit, which is referred to in the answer as being attached to the petition, be taken as part of the answer.

3. **COMMON CARRIERS: Delay in Transporting: Caused by Attachment of Property Under Massachusetts Statute: Striking Out Defense.** In an action against a common carrier, for damages alleged to have been caused by its negligent delay in transporting certain articles, a defense, pleaded in the answer, that the delay was caused by the attachment of the property in Massachusetts, was struck out on motion. A statute of that state provided that a common carrier summoned as garnishee which has goods in its possession shipped by or consigned to the defendant in the action, shall not be liable to the owner or consignee by reason of delay occasioned by the garnishment. The plea struck out averred possession of the property attached in another than defendant and that defendant was not a party to the attachment proceeding. *Held,* that no defense was stated under the Massachusetts statute, which purports to protect only carriers summoned as garnishees who are in possession of the property.

4. ————: **Damage to Property Transported: "Leakage," Definition of.** The escape of brine through openings knocked in casks was not "leakage" within the meaning of a bill of lading, which provided that the carrier should not be liable "for loss or damage caused by shrinkage, leakage or breakage."

5. ————: **Instructions: Negligence: Delay in Transporting Property: Instruction that Negligence is Presumed Erroneous.** In an action against a common carrier for damages alleged to have been caused by its negligent delay in transporting a shipment of mackerel, an instruction that if the mackerel were in apparently good order when shipped, and when delivered to plaintiff by defendant some of the casks were broken open and the brine had escaped and the mackerel become deteriorated, then the law presumes the negligence of defendant caused said condition and that this presumption would obtain until defendant overcame it by the greater weight of the evidence, is erroneous. It was incumbent on plaintiff to establish its charge of negligence and consequent damage to the mackerel, and the burden of proof was on it from the beginning to the end of the case.

Appeal from St. Louis City Circuit Court.—*Hon. Dan'l G. Taylor,* Judge.

REVERSED AND REMANDED.

*James R. Van Slyke* for appellant.

*Wise, McNulty & Keefe* of counsel.

(1) The bill of lading introduced by plaintiff shows that the goods were to be delivered to the Merchants Despatch Transportation Company at the port of Boston, and by them to be forwarded from Boston to East St. Louis, Ill. The evidence of plaintiff disclosed the fact that the goods were properly forwarded after they were delivered to the Merchants Despatch Transportation Company at Boston, Mass., and, therefore, defendant's demurrer to plaintiff's evidence should have been sustained. (2) It was the duty of the court to construe the contract in question, there being no ambiguity in same and no question for the jury to pass upon. It was error, therefore, for the court to instruct the jury with reference to the construction of the contract. Caldwell v. Dickson, 26 Mo. 60; Blanke v. Dunnermann, 67 Mo. App. 591; Edwards v. Smith, Adm'r, 63 Mo. 119; Ford v. Dyer, 148 Mo. 528; McClurg v. Whitney, 82 Mo. App. 624. (3) It was error for the trial court in its instructions to the jury to ignore the valid exceptions contained in the bill of lading when plaintiff's suit was based upon said contract, and said contract was introduced in evidence by plaintiff. Levering v. Union T. & I. Co., 42 Mo. 88; Wyrick v. Railway, 74 Mo. App. 406; Railway v. Sloop, 200 Mo. 215; Milling Company v. White Line C. T. Co., 122 Mo. 258. (4) The plaintiff in his pleadings was limited to the particular breach of the contract, to-wit, the delay as the proximate cause of the damage, and was entitled to recover upon no other theory, and must prove this allegation by competent evidence. The plaintiff having failed to introduce evidence that delay caused the damage, it was error for the court to instruct the jury upon this proposition, and allow them to find that the delay did cause the damage without competent

evidence of said facts. Standard Mill. Co. v. White Line C. T. Co., 122 Mo. 258; Evans v. Graden, 125 Mo. 72. (5) Where damage results by reason of an exception in the bill of lading, the burden is then upon plaintiff to show the loss or damage resulted by reason of negligence on the part of defendant, said negligence, however, to be limited to the allegation of plaintiff's petition. Hurst v. Railroad, 117 Mo. App. 25; Levering v. Union T. & I. Co., 42 Mo. 88. (6) Where petition alleges a particular breach of the contract as causing damage, and there are valid exceptions in the bill of lading excusing such breach, these exceptions are not invalidated by any act of negligence on the part of the carrier, but only such negligence as results in or causes the alleged breach, and it is error for the court to instruct the jury that defendant is not excused if they were guilty of any act of negligence, and not confining the acts of negligence to those resulting or referring to the alleged breach of the contract. (7) The court erred in striking out parts of appellant's amended answer, because said portion of said answer set forth a valid excuse and defense for the alleged delay, both at common law and under the statutes of the commonwealth of Massachusetts. 5 Am. and Eng. Ency. of Law (2 Ed.), p. 240; 2 Hutchinson on Carriers (3 Ed.), secs. 738, 747; Nickey v. Railway, 35 Mo. App. 79; Landa v. Holck, 129 Mo. 63; Styles v. Davis, 1 Black (U. S.) 101; Adams v. Scott, 104 Mass. 169; Hynds v. Wynn, 71 Iowa 593; Cooley v. Railway, 53 Minn. 327; Walker v. Railroad, 49 Mich. 446.

*Schnurmacher & Rassieur* for respondents.

(1) The circuit court properly struck out of the answer the defense based on the Massachusetts garnishment proceedings, and on the trial properly excluded evidence in support of such defense, because: (a) The goods in question were not seized or taken into actual

custody by the officer, but a mere notice of garnishment was served on George H. Warren and on the American Express Company, who were under no duty, contractual or legal, to plaintiff.   (b)   The goods were in transit when said garnishees were served, and therefore, on defendant's own theory, the goods were not affected by the garnishment, which can only be binding on the carrier where transportation of property in his possession has not yet commenced.   Elliott on Railroads, sec. 1538, p. 2388.   Defendant at bar undertook the carriage of the goods from Liverpool to East St. Louis, and the goods were in transit from the time they left Liverpool.   (c)  The plea of the answer stricken out shows affirmatively that trustee process or garnishment in Massachusetts only protects the carrier who is summoned, respecting goods in his possession.   The Massachusetts Act is pleaded specifically to the effect that "when a common carrier summoned as trustee in an action at law has in his possession or its possession goods shipped by or consigned to the defendant in such an action, such carrier, in the absence of collusion on his or its part, shall not be liable to the owner or assignee by reason of his or its failure to transport and deliver the said goods until the attachment is dissolved or the carrier is discharged as trustee."   Having specifically pleaded the statute, the answer then averred, in so many words, that defendant was not in possession of the mackerel and was not made a party to the garnishment proceedings, which ran only against George H. Warren and the American Express Company, strangers to the contract between plaintiff and defendant. Defendant, therefore, while seeking the protection of the Massachusetts Act, did not bring itself within its provisions.   (2)   Defendant is a common carrier and subject to all the liabilities of a carrier.   Kirby v. Express Co., 2 Mo. App. 369; Robinson v. Desp. Co., 45 Iowa 470; Desp. Co. v. Block, 86 Tenn. 392.   (3)   The

loss of goods delivered to a common carrier raises a presumption that the loss was due to the negligence of the carrier. Kirby v. Ex. Co., 2 Mo. App. 369. Indeed, common carriers are insurers of goods entrusted to them for carriage, and the burden is on them to show that they fully performed their contract; or, that the goods were lost by some excepted peril. Hill v. Sturgeon, 28 Mo. 323; Alexander v. McNally, 112 Mo. App. 563. (4) In an action against a carrier of goods which were delivered to the carrier free from injury and delivered to the consignee injured, the burden is on the carrier to account for the injury. Buddy v. Railway, 20 Mo. App. 206; Nairn v. Railway, 126 Mo. App. 707. (5) The burden of accounting for or proving that the damage to goods in the hands of a common carrier was occasioned by a cause which imposes no liability, is upon the carrier. Davis v. Railway, 89 Mo. 340; Wolf v. Ex. Co., 43 Mo. 421; Read v. Railroad, 60 Mo. 199. Moreover, where the injury to goods occurs from any of the causes excepted by the bill of lading, in order that the carrier may be relieved from liability, it must appear that the exception named was the sole and proximate cause of the damage; otherwise the carrier will be liable. Read v. Railroad, 60 Mo. 199; George v. Railway, 57 Mo. App. 358. (6) The bill of lading acknowledged receipt by defendant, at Liverpool, of the goods in apparent good condition, and proof that they were delivered to plaintiff at East St. Louis in a damaged condition, made out a prima-facie case and warranted a verdict for plaintiff, unless defendant satisfied the jury that the damaged condition was due to one or more of the excepted causes mentioned in the bill of lading. This defendant attempted to do by opinion evidence that the barrels were made to leak through rough weather encountered by the SS. Sagamore. But defendant proved too much. Its evidence was that the barrels leaked and were pickle-

stained when the shipment reached Boston, but that the barrels were otherwise in good condition. The proof showed that many were broken on arrival at East St. Louis, and no effort was made by defendant to account for this damage, which must have occurred during the rail transportation between Boston and East St. Louis. The presumption is that this injury was due to the negligence of defendant or of its agencies. (7) Counsel for defendant err in stating that the goods in question were to be delivered to defendant at Boston and by it to be forwarded to East St. Louis. Defendant undertook the carriage of the goods from Liverpool to Boston by the SS. Sagamore and from Boston to East St. Louis by rail. As to what its traffic arrangements were with the owners of the vessel and with the railroad or railroads, enabling it to perform its undertaking, plaintiff is not concerned.

Plaintiff recovered judgment for damage to a cargo of pickled mackerel, shipped from Liverpool, England, and consigned to defendant in East St. Louis, Illinois. The mackerel were purchased in the north of Ireland by John Murray, an agent of defendant, were shipped in barrels by the steamship Sagamore from Liverpool to Boston, and thence transported by rail to East St. Louis. There were 303 barrels of mackerel and the petition avers defendant, a transportation company, undertook, for a consideration paid by plaintiff, to carry them from Liverpool to Boston and therefrom by rail to East St. Louis, within a reasonable time after December 21, 1905, the date dedefendant received the fish in Liverpool for transportation; that defendant carried the cargo to Boston where it arrived January 3, 1906, and it then became defendant's business to transport it to East St. Louis, which would require four to six days, but in disregard of its duty defendant failed to deliver the fish until late in January or early in February, or four weeks

later than a reasonable time.. It is further averred that in consequence of the long delay in transporting and delivering the fish at East St. Louis, part of them became spoiled and deteriorated; some of the barrels in which they were packed were broken in transit, and the brine escaped from them in consequence of the length of time consumed in transportation; that the market value of mackerel depreciated between the early part of January, when the fish in question should have arrived in St. Louis, and the latter part of January or early in February, when they did arrive; that by reason of those matters plaintiff had sustained damage in the sum of $909.75, for which judgment was asked. The answer originally filed, besides a general denial, contains a special defense of the following tenor: Whatever delay occurred in the transportation of the fish to destination was caused by their being attached under process of law issued out of the municipal court of the city of Boston, Massachusetts, in a suit brought by trustee process (i. e. garnishment) by Thomas Woodward, plaintiff against John Murray, defendant, Geo. H. Warren and the American Express Company trustees, the said writ of attachment having been issued January 3, 1906, and duly served on said Warren and the Express Company, returnable on January 13, 1906, to said municipal court, which is one of record and had jurisdiction of the subject-matter of the action and of the parties; that under said writ so issued, the fish were seized by an officer having authority to do so, as the property of John Murray, of County Clare, Ireland, who was the shipper of the goods. The seizure occurred while the property was in possession of Geo. H. Warren, doing business as Warren & Company, and the owner of the steamship Sagamore, in which the fish had been carried across the Atlantic; that plaintiff was notified of the institution of the said

143 App—4

suit in the municipal court of Boston, of the seizure of
the property, and plaintiff declined to appear in the
cause or defend it; that the fish, at the time of the com-
mencement of said suit and attachment, were in the
possession of Warren and mostly in the hold of the
steamship Sagamore, but partly on the dock in the city
of Boston, and the attachment was levied on said goods
before they were taken from said hold and dock and
before they could be delivered by Warren to defendant
as required by the bill of lading. None of the fish were
turned over to defendant by Warren & Company until
January 24, 1906, and as soon as they were, defendant
transported them without delay to East St. Louis and
delivered them to plaintiff; that defendant was not
made a party to the suit above described in the Boston
Municipal Court; that there was in force in Massachu-
setts at the time the suit was instituted, a statute of
said State, as follows:

"That all personal actions except actions for tort,
for malicious prosecution or for libel or for assault and
battery or actions of replevin, may be commenced by a
trustee process, and any person or corporation may be
summoned as trustee of defendant therein, but a per-
son who is not an inhabitant of the Commonwealth or a
corporation which is not established under the laws
shall not be summoned, unless he or it has an estab-
lished place of business in the Commonwealth."

There was also in force in Massachusetts an act of
1895, chapter 324, which is as follows:

"Provided, when a common carrier summoned as
trustee in an action at law, has in his possession or its
possession, goods shipped by or consigned to the de-
fendant in such an action, such carrier, in the absence
of collusion on his or its part, shall not be liable to the
owner or consignee by reason of his or its failure to
transport and deliver the said goods until the attach-
ment is dissolved or the carrier is discharged as trus-
tee."

It was further averred Geo. H. Warren and the American Express Company were common carriers in the commonwealth of Massachusetts, had established places of business there and were summoned in said suit by virtue of its laws. The foregoing special defense was struck out on motion of plaintiff and an exception was saved to the ruling. Another special defense was based on the provisions in the bill of lading, purporting to exempt defendant, or any carrier handling the goods, from liability for loss or damage to them before arrival at the port of Boston, due to causes beyond the control of the carrier, or unless claim was made for the damage or loss while the goods were in the actual custody of the carrier; further providing no common carrier should be liable for loss or damage caused by shrinkage, leakage or breakage, or packing the goods in packages of insufficient size or strength; also claiming the benefit of other exemptions in the bill of lading relating to losses subsequent to the arrival of the merchandise at the port of Boston, which said no carrier or company in possession of the property should be liable for loss or damage to the goods due to causes beyond its control by breakage, leakage or chafing; or for loss or damage not occurring on its own line or its portion of the through route; or unless claim should be made in writing in thirty days after the delivery of the property to the consignee. The answer alleged that if damage occurred to plaintiff's property it was due to the causes mentioned for which defendant was not liable under the terms of the bill of lading, and that no claim was made within thirty days for any damage; alleged further that under the laws of England, where the bill of lading was issued, the consignor and consignee were allowed to enter into valid contracts, stipulating for exemptions such as we have stated; that any loss or damage which happened to plaintiff's property as alleged in its petition, was due

to the negligence of the consignor in failing to pack the property properly for its journey.

Evidence was introduced tending to sustain the averments of the petition regarding the prolonged delay in transporting the fish to East St. Louis and the damaged condition in which they arrived. It was proved brine had leaked from a great many of the bar-, rels and in consequence the fish had become what is called "rusty," and were worth not more than half they would have been worth if in good condition. It was also proved some of the barrels had burst about their heads, and the staves were pierced with holes.

The instructions for plaintiff required the jury to find as grounds of a verdict against defendant, that it had delayed the transportation of the fish longer than was necessary to carry them from Liverpool to East St. Louis by the exercise of reasonable care, and that when they reached destination they were not in good condition in consequence of the delay. In other words, it was necessary to find the delay was negligent and caused damage to the fish in order to return a verdict against defendant. Several instructions were given at the request of plaintiff predicating liability on negligence, and several at defendant's request, the purport of which was, if the jury found the fish had been damaged by storms, heavy seas or perils incident to navigation, and not by any negligence of defendant, plaintiff could not recover. Further, if the jury believed they were damaged partly in consequence of the kind of cask in which they were packed for shipment, or because of the way in which they were packed in the casks, and partly by reason of the delay in transportation, and the jury were unable to separate the damage due to the two causes, then plaintiff could not recover; and if the jury were able to separate the damage due to the two causes, plaintiff could recover only for damage due to the negligence of defendant. Further, if the jury found the damage or loss to the fish was due to

the nature of the goods or the insufficient packing, the verdict should be for defendant. The defendant requested and the court refused to instruct plaintiff could not recover for damage to the fish due to leakage, and refused several instructions to the effect that delay caused by the proceedings in the court at Boston constituted a defense to any claim for damage suffered by plaintiff on account of such delay.

Defendant appealed from the judgment for plaintiff given on a verdict in its favor.

GOODE, J. (after stating the facts).—The instructions requested show both parties tried the case on the theory that plaintiff was counting on the negligent delay of defendant in carrying the fish, whereby they were damaged, and not on any common law liability for delivering the fish in a damaged condition. [Hurst v. Railroad, 117 Mo. App. 35, 37.] The cause was submitted on the theory that there must have been careless and unreasonable delay in the transportation of the goods from Liverpool to East St. Louis to lay defendant liable, and damages could not be recovered for losses due to delay or other injurious incidents of the voyage across the Atlantic, caused by contrary winds, heavy seas, or the perils of navigation generally, for which defendant was not to blame. Hence we shall not consider the appeal with reference to a possible common law liability of defendant. It had issued in Liverpool a through bill of lading by which it agreed to transport the fish from that port to East St. Louis, agreeing to carry first to Boston by the ship Sagamore, and from there to East St. Louis by rail. Defendant, therefore, became a common carrier for the entire route and was liable for the negligence of any carrier which transported the property under an arrangement with it. [McCann v. Eddy, 133 Mo. 59.]

One point of controversy is over the court's action in striking out the special defense based on the trustee

process or garnishment issued by the Boston Munici-
pal Court, wherein Warren, owner of the steamship,
and at the time actually the custodian of the fish, and
the American Express Company, the agent of defendant
in issuing the bill of lading, were garnished. The
court not only struck out this defense and excluded
evidence to support it, but refused instructions to the
jury on the issue, thus carrying out consistently the
theory that the garnishment of Warren and the Am-
erican Express Company was no excuse for the deten-
tion of the fish three weeks or more in Boston. It is
to be remembered the gravamen of this action is the
negligent delay in transit and damage caused thereby,
and not conversion of the property by defendant; and
the question urged is whether the garnishment of the
owner of the steamship who had the fish in custody,
and his refusal to relinquish the property to defend-
ant until the garnishment suit was dismissed, thereby
preventing defendant from forwarding the goods
promptly to destination, in law excuses defendant's
delay. There is some conflict between the courts re-
garding whether a common carrier which has goods
in its hands and actually in transit, as these were, can
be garnished in an action against the owner of the
goods, and perhaps the weight of authority is against
the right to levy such a garnishment. [2 Hutchinson,
Carriers (M. & D. Ed.), sec. 746, orig. sec. 402; 4 El-
liott, Railroads (2 Ed.), sec. 1538 and cases cited; Ste-
venot v. Koch, 28 L. R. A. 600 and note; Baldwin v.
Railroad, 51 L. R. A. 640.] The point has not been
passed on in this State, though in Landa v. Holck & Co.,
129 Mo. 663, it was held a railroad company which had
received goods for shipment but had not yet started
them in transit, might be garnished in respect of such
goods, and this is the general doctrine. The law in
Massachusetts is contrary to the weight of authority
and there are peculiar statutes on the subject in that
State, as will be seen supra. In Adams v. Scott, 104

Mass. 164, it was held a common carrier may be summoned in garnishment in an action against the owner of the goods actually in transit. That decision was given on a construction of the Massachusetts statute first quoted above. A fact much relied on by this plaintiff is that trustee process in the Boston Municipal Court was sued out, not against plaintiff, but against Murray. The second Massachusetts statute quoted supra, says a common carrier summoned as trustee and having in its possession goods *shipped by* or consigned to the defendant in such an action, in the absence of collusion on its part, will not be liable to the owner or consignor by reason of its failure to transport or deliver the goods until the attachment is dismissed or the carrier discharged as trustee. That statute exonerates a carrier garnished in an action brought against either the shipper of the goods or the consignee from liability to the owner or the consignee for delay occasioned by the garnishment. The shipper in the present case was John Murray and under the statute it looks like garnishment of the carrier of the fish in an action against Murray would, in Massachusetts, be a good excuse for delay in transportation due to the garnishment, in favor of the party summoned as garnishee. The act was passed, according to the answer, in 1895, and perhaps in consequence of the decision given in 1870, in Edwards v. White Line Transit Co., 104 Mass. 159, that garnishment was no defense to the carrier if it was in an action against any person other than the owner of the goods. In said case the garnishment was in an action against the shipper, just as here, and the carrier having been sued by the owner for delay thus caused, it was held the garnishment was no defense. Plaintiff says the defendant was not in possession of the goods at the time of the garnishment and so alleges in the portion of the answer which was struck out. The answer does not say in so many words, defendant was not in possession at the time of the service of gar-

nishment, but says Warren & Company were, and the goods were not delivered to defendant until the latter part of January. Nothing is alleged either in the answer or the petition about Warren & Company being the agent of defendant, or any other fact which would make the custody of Warren & Company the possession of defendant. [Landa v. Holck & Co., 129 Mo. 663, 671.] The only reference in the answer which shows the facts about this matter says it was attached to the petition as an exhibit. This fact did not make it a part of the petition, much less of the answer. [Bowling v. McFarland, 38 Mo. 465; Pomeroy v. Fullerton, 113 Mo. 440.] It follows we are compelled to dispose of an interesting question on a point of pleading. The part of the answer struck out avers possession of the property in another than defendant when trustee process was served; also avers defendant was not a party to the proceeding, and hence states defendant outside the scope of the Massachusetts statute, which purports to protect only carriers who are in possession of the property and those summoned as trustees. We will not determine whether summoning an agent of defendant, if Warren & Company was such, would have given defendant the benefit of the statute. What we hold is that having alleged Warren & Company was in possession of the property at the time trustee process was served, and having omitted to allege any fact to show custody or possession of that garnishee was the possession of defendant, no defense was stated under the Massachusetts statute.

Complaint is made because the court refused to charge that before plaintiff could recover it must prove by a preponderance or greater weight of the evidence, any damage done to the goods by leakage was directly caused by some act of negligence on the part of defendant, its agents or servants. But the requested instruction said plaintiff admitted the damage to the mackerel was caused by leakage, and there was no such admission

either in the pleadings or proof. It is true plaintiff's secretary testified the brine had run off the mackerel in some of the barrels, but he said the barrels were stove in at the head and in some places holes had been run through the staves. The escape of brine through openings knocked in the casks was not leakage within the meaning of the bill of lading, nor was testimony of its escape in that manner equivalent to admitting the damage was due to leakage.

For plaintiff the court instructed the jury that if the mackerel were shipped in apparently good order and condition and properly packed, and when delivered to plaintiff by defendant some of the casks were broken open and the brine had escaped, and the mackerel become deteriorated, then the law presumed the negligence of defendant caused said condition, and this presumption would obtain until defendant showed by the greater weight of evidence that its negligence did not bring about the condition, and unless defendant had proved to the satisfaction of the jury by the greater weight of evidence the condition of the mackerel was not produced by defendant's negligence, and the jury should find the mackerel were not transported and delivered in the usual time, the verdict must be for plaintiff. Plaintiff counted in its petition on negligent delay of defendant in transporting the fish, and it will be perceived the instruction just epitomized told the jury the law presumed negligence if the mackerel were delivered to defendant in good condition and delivered by defendant to plaintiff in a deteriorated condition. This is not the law. It was incumbent on plaintiff to establish its charges of negligence and consequent damage to the mackerel. In support of the instruction we are cited by plaintiff's counsel to Kirby v. Express Co., 2 Mo. App. 369. That decision does support it, but it was rendered on the authority of Levering v. Union, etc., Co., 42 Mo. 88, and Ketchum v. Express Co., 52 Mo. 391, and those decisions were expressly overruled

in Witting v. Railroad, 101 Mo. 631, wherein the court said it must be taken as the established law of this State that when the cause of action stands on the ground of negligence on the part of the carrier, the burden of proof is upon the plaintiff; that the party who founds his cause of action on negligence must be prepared to establish the assertion by proof, and the burden of proof is on him from the beginning to the end of the case. This decision was reaffirmed in Stanard Mill. Co. v. Transit Co., 122 Mo. 258, 276.

The judgment is reversed and the cause remanded. All concur.